E. S. KENNEY, Respondent, v. KANSAS CITY, PITTS-BURG & GULF RAILROAD COMPANY, Appellant.

St. Louis Court of Appeals, March 29, 1898.

1. **Negligence**: ACT OF GOD. We apprehend that the concurring negligence which, when combined with the act of God, produced the injury, must be such as is in itself a real producing cause of the injury, and not a mere fanciful, or speculative, or microscopic negligence, which may not have been in the least degree the cause of the injury.

2. ———: ———. If the act of God in the particular case was of such an overwhelming and destructive character as by its force, and independently of the particular negligence alleged or shown, to produce the injury, there would be no liability though there was some negligence in the maintenance of the particular structure.

3. ——: ——. To create a liability it must have required the combined effect of the act of God and the concurring negligence to produce the injury.

4. ——: SURFACE WATER. That portion of water which escaped from the creek became surface water as soon as it left the bank of the creek, but it lost its character when it reached the slough.

5. ——. If a slough was not an independent water course or part of a creek the defendant had a right to dam it up.

6. ——: ——: DAMAGES: WATER COURSE: NEGLIGENCE: STATUTES. If the slough in question was a water course then there was a palpable violation of the statute in constructing a solid embankment across it (R. S. 1889, sec. 2593) and the defendant having failed to remove the obstruction, must answer for the resulting damage.

7. ——: ——: INSTRUCTION. An instruction which assumes that a slough is a part of a running stream or creek, which would make it a water course, is erroneous. This question should be submitted to the jury for their determination. It should be made an issue in the case.

*Appeal from the Newton Circuit Court.*—HON. JNO. C. LAMSON, Judge.

REVERSED AND REMANDED.

TRIMBLE & BRALEY and JOHN T. STURGIS for appellant.

There is only one theory upon which the plaintiff would be entitled to recover in this action, and that is that in building the embankments across the slough, the railroad company was negligent, its act, was in no sense unlawful; there is a marked distinction between an unlawful act, and a negligent act. The first is the doing of something prohibited by law, while the second —the negligent act—is the "failure to do what a reasonable and prudent person would ordinarily have done under the circumstances of the situation, or doing what such a person would not have done." Anderson's

Dic. The railroad company had the lawful right to build its railroad across this slough, the general rule being that where the railroad company acquires or condemns land for its right of way by proper methods, and without negligence, unskilfullness or mismanagement, constructs its railroad embankment thereon, the injuries caused by such embankment, will be regarded as the natural incidents and consequences of that which the corporation, by condemning the land and obtaining its right of way, acquired the lawful right to do. Jones v. R. R., 84 Mo. 151; Clark v. R. R., 36 Mo. 202; Abbott v. R. R., 83 Mo. 271. The slough in question here does not constitute a water course, according to all of the testimony. Water flowed therein, by reason of its being a depression, and at times when Shoal creek had overflown its banks; it was an overflow or freshet channel of the creek and hence it does not come within the definition of a water course as defined in Gray v. Schriber, 58 Mo. App. 173, which cites and approves the definition of a water course given in Jeffries v. Jeffries, 107 N. Y. 650. The only purpose of this slough was to receive waters overflowing from the banks of Shoal creek, at points above the plaintiff's lands, and returning it back to the stream; it does not constitute a branch, and serves no other purpose, than that of land of a lower level than the banks of the stream in conducting the water from it in flood times. It is well settled in this state that a railroad company is not liable for injuries caused by an extraordinary and unusual flood. Ellett v. R. R., 76 Mo. 718; Sedgwick on Damages, secs. 32, 33; Gould on Waters, sec. 297. The slough in question is not a natural water course. The proof shows that the slough performed no other office than to receive the overflow waters from Shoal creek and carry them a short distance and then back

into such main channel. It performs no other office than that of a depression in the land, or a swale, or any other place where water may run during flood times. It lacks all of the essential attributes of a water course; it has neither head nor mouth and it drains no particular scope of country; while it may have banks it does not furnish the necessary requirements of a water course. To say that such a slough is a natural water course is equivalent to saying that the channels formed by flood waters or depressions in the land where such waters flow in times of flood are natural water courses; no such idea has ever been advanced or advocated by any authority. Shoal creek is a thing of itself, and it is a natural water course, and the many depressions in the bottom through which its overflow water is shown to run can not constitute additional water courses. The water thus flowing in such depressions or sloughs is surface water; the water was so high that it ran over the banks of the creek at a point farther up Shoal creek and flowed down through the bottoms east of the railroad and across the railroad track. The water was so high that it filled the whole valley and flowed over the land regardless of channels, the ingenuity of man will hardly be able to suggest the construction of a railroad to meet such water courses unless the whole valley be made a continuous bridge. As to what constitutes a natural water course, the case of Gibbs v. Williams, 25 Kan. 214, is in point. The alleged water course in that case was a draw, ravine or depression, five feet in depth and from thirty to fifty feet in width, running through the city of Concordia. In time of heavy rains there was a rapidly flowing current in this draw or ravine. Judge Brewer in discussing the case, and adopting the rule of the common law as to surface water had occasion to define a water course in the following language: "For a water

course there must be a channel and bed of the stream, and not merely low land or a depression in the prairie over which water flows. It matters not what the width or depth may be; a water course implies a distinct channel, a way cut and kept open by running water, a passage whose appearance, different from that of the adjacent land, discloses to every eye on a mere casual glance the bed of a constant or frequent stream." Citing Swett v. Cutts, 50 N. H. 439; Ashley v. Walcott, 11 Cush. 192; Hoyt v. City of Hudson, 27 Wis. 664; Angell on Water Courses [5 Ed.], sec. 4; Barnes v. Sabron, 10 Nev. 218.

O. L. CRAVENS for respondent.

Plaintiff has the right to sue for and recover damages even for permanent injuries to the realty although holding under contract of sale. 3 Sutherland on Dam. 366.    There being no answer to the amended petition, there were no issues for trial court and none for this court to pass upon.    R. S. 1889, sec. 2107; Ticknor v. Voorhis, 46 Mo. 110; Rand v. Wall, 26 Mo. App. 591; Basye v. Ambrose, 28 Mo. 39; Bank v. Umrath, 55 Mo. App. loc. cit. 50; City v. Gleason, 15 Mo. App. loc. cit. 29; Cobbey on Replevin, sec. 577.    The question submitted to the jury was, whether defendant was negligent in failing to provide sufficient escape for waters of Shoal creek at ordinary stages of high water and if it did so fail defendant is liable even though the flood in question was extraordinary, if this failure combined with the unusual flood to injure plaintiff.    Brink v. R. R., 17 Mo. App. 177; Pruitt v. R. R., 62 Mo. 527; 102 Mo. loc. cit. 238; 112 Mo. 15.    The defendant has no right to stop up a living stream of water with its roadbed, even though it owns the right of way; but it

can construct bridges and openings over water courses so as not to impair its usefulness. R. S. 1889, sec. 2543; Hosher v. R. R., 60 Mo. 329–334; Pinney v. Berry, 61 Mo. 359, and a multitude of other cases.

BIGGS, J.—The railroad which is operated by the defendant extends through the valley of Shoal creek in Newton county. Shoal creek drains a large area of country. The valley varies in width from one half to one mile. What is known as the Ford farm is situated in this valley. It is located on an island formed by Shoal creek and a slough. It has for its southern and western boundaries the main channel of the creek, and the slough forms its eastern boundary. At this point Shoal creek runs in a northwesterly direction. The slough puts out from the creek at the southern boundary of the farm. It runs east several rods, turns to the northwest, and leads back into the creek about one mile below. The railroad is constructed through this farm. In its construction a solid embankment was made across the southern end of the slough a few rods east of the point where it separates from Shoal creek, and about one half mile north where the roadbed crosses back to the east side of the slough another embankment was made. In 1895 the plaintiff cultivated this farm. He raised about thirty-five acres of corn, which he cut up and put in shocks. The greater portion of the corn was grown on the west side of the railroad. In December, 1895, there was an overflow of the waters of Shoal creek, and the plaintiff's corn was washed away, and about three acres of growing wheat was also destroyed.

He avers that the slough was a water course; that the construction of the embankment across it was unlawful, and that by reason of the obstructions the plaintiff's crops were destroyed. The answer of the

defendant is a general denial. It contains the further averments that the damage to the plaintiff's crops was caused by surface water, and that the railroad was owned by the Philadelphia Construction Company; that the defendant was placed in possession of the road for the purpose of operating it, and for no other purpose, except to make such repairs as were incident to the operation of the road; that the defendant had nothing to do with the original construction of the roadbed, and it could not be held for damages resulting from its negligent construction. * *. * At the close of the plaintiff's testimony and also at the close of the case, the defendant asked the circuit court to direct a verdict for it. This the court refused to do. The jury found the issues for the plaintiff and assessed his damages at the sum of $65. The defendant has appealed.

All of the witnesses agree that the flood in question was caused by an unusual and almost unprecedented rainfall. The rainfall was so great that the overflow water from the creek covered the greater part of the valley. The water was deep enough on plaintiff's land to carry off the corn on both sides of the railroad. The chief ground of nonsuit is that there is no substantial evidence that the obstruction of the water by reason of the embankments was one of the efficient causes of the injuries complained of.

The argument in support of the nonsuit assumes that the slough is in fact a water course, and that its obstruction in the manner indicated was unlawful, but that the defendant can not be held for the damages complained of, for the reason that all of the testimony tended to prove that the injuries were to be attributed *solely* to the act of God. In other words, that all the evidence tended to prove that the flood was unusual and there was no substantial evidence that the concur-

ring negligence in the construction of the roadbed, when combined with the act of God, produced the alleged injuries.

We had occasion to discuss this question in the recent case of James against this defendant, reported in 69 Mo. App. 431. In that case we followed the rule announced by the supreme court of Pennsylvania in the case of Railroad v. School District, 96 Pa. St. 65. That court said: "We appre-

NEGLIGENCE: act of God.

hend that the concurring negligence, which, when combined with the act of God, produce the injury, must be such as is in itself a real producing cause of the injury, and not a merely fanciful, or speculative, or microscopic negligence which may not have been in the least degree the cause of the injury. In other words, if the act of God in the particular case was of such an overwhelming and destructive character as by its force, and independently of the particular negligence alleged or shown, to produce the injury, there would be no liability though there was some negligence in the maintenance of the particular structure. To create a liability, it must have required the combined effect of the act of God and the concurring negligence to produce the injury. The present case affords a fair illustration of the reason for this distinction. The defendant's witnesses testified that the force and volume of the water were so very great that it would have required one hundred and twenty such culverts to pass it off."

On a previous submission of this case I was led to the conclusion (and so expressed myself in an opinion) that the character of the flood was such that the conclusion was unavoidable, that the plaintiff's crops would have been washed away had there been no obstructions in the slough. A second examination has caused me to question my former conclusion.

The question suggested was probably for the jury to
determine.   The trial judge saw and heard the wit-
nesses, was personally familiar with the physical facts,
all of which ought to lead us to sustain his action in
submitting the case to the jury.   The evidence offered
by plaintiff tended to prove these facts.   A short dis-
tance above the southern end of the Ford farm Shoal
creek makes a bend to the southwest, forming a horse
shoe.   Where the bend begins on the upper side there
is a depression or low place extending to the northwest
through the heel of the horse shoe and intersecting
the slough between the two embankments.   During
the overflow complained of the water escaped from the
creek and passed down through this swale until it
reached the slough.   The embankments and the rail-
road bed which were constructed about two or two and
a half feet above the bank of the slough necessarily
formed an obstruction to this water.   During the
freshet the embankments washed out.   There is no
positive evidence when this occurred or what effect it
had on plaintiff's crops.   Mr. Basye, who owns some
land in the bend of the creek, and situated about one
half mile above the Ford farm, stated that he was
watching the flood from his place, and that when the
flood was at its highest he noticed that the water in
the depression suddenly subsided three or four feet as
if some obstruction below had gone out.   He did not
say that he saw the embankments wash out at that
time, nor did he know when they did wash out.   He
was not in a position where he could see them.   He,
however, gave it as his opinion that the removal of
the dams caused the sudden subsidance of the water.
These physical facts and the testimony of Basye would
probably warrant the conclusion that the damage to
plaintiff's crops on the east side of the railroad would
not have been so great had there been no obstructions

in the slough. It is inconceivable, however, that the corn on the west side of the railroad could have been injured by the obstruction of the water on the east side, as the argument of increased damage must rest on the washing out of the lower embankment and the rapid subsidance of the accumulated water on account of it. As the railroad bed protected the corn on the west from the water on the east, that portion of the crop must have been destroyed by water coming upon the land from a point to the west of the railroad track, unless the water was high enough to pass over the track. The testimony offered by the defendant tends to show that a few rods west of the railroad track there is a swale or depression extending north and south through the farm, and that the corn on that portion of the land was washed away by water escaping from Shoal creek opposite to that point. There was also evidence tending to prove that during freshets and before the embankments were made, about one third of the water flowing in the creek passed through the slough. This evidence would probably justify the inference that but for the embankments Shoal creek would have been relieved of a portion of the water at that point, thereby lessening the overflow and the consequent damage to plaintiff's corn west of the railroad.

The other ground of nonsuit is that the destruction of plaintiff's corn was caused by surface water, for which the defendant is not answerable. That portion of the water which escaped above Basye's farm became surface water as soon as it left the bank of the creek, but it lost that character when it reached the slough. Jones v. Hannovan, .55 Mo. 462. As to the overflow west of the railroad the suggestion is likewise without force as the evidence tends to show that the volume of overflow water at that place was

materially increased by reason of the obstruction of the mouth of the slough. Our conclusion is that the circuit court was right in refusing to nonsuit the plaintiff.

The defendant complains of the following instruction: "The jury are instructed that defendant had a right to construct its road over and along the land mentioned in the pleading, and over and across the track in question, to wit, Shoal creek; and to that end might lawfully construct and maintain bridges across said creek, but it was its duty so to construct and maintain said bridge or crossing over said creek as to permit the water and drift that are accustomed to flow down said creek to pass along the same without unreasonable obstruction.

"In this connection you are further instructed that defendant can not lawfully build an embankment in and across a natural water course so as entirely to obstruct the flow thereof, and if you believe from the evidence that Shoal creek was a natural stream of water as in these instructions defined, and that defendant so constructed its road across the same as entirely to obstruct the channel of said stream, and failed to restore the same to its former state, or to such state as not necessarily to have impaired its usefulness, and that by reason thereof plaintiff's crops were overflowed and injured, you will find for plaintiff, unless you further find that said injury was caused by an extraordinary flood or freshet, in which case you will find for the defendant." This instruction erroneously assumes that the slough is a part of Shoal creek which would make it a water course, as it was conceded that Shoal creek was a water course of considerable size. There was some evidence tending to prove that the slough was not a part of Shoal creek, and was not a water course. This was an issue in the case. It was

made both by the pleading and evidence. It was a material issue, for if the slough was not an idependent water course or part of Shoal creek, the defendant had a right to dam it up. Hence the instruction was both erroneous and predjudicial. The other defense is without merit. It is the duty of the lessee of a railroad to see to it that the roadbed has been properly constructed and to remedy defects if there are any. If the slough in question was a water course, then there was a palpable violation of the statute in constructing a solid embankment across it (R. S. 1889, sec. 2593), and the defendant having failed to remove the obstruction, must answer for the resulting damage: For the error pointed out in the instruction, the judgment will be reversed and the cause remanded. It is so ordered. Judge BOND concurs; Judge BLAND dissents.

### DISSENTING OPINION BY JUDGE BLAND.

The so-called slough begins at and in the bed of the main channel of Shoal creek and empties below into the main channel of the principal stream. In times of freshet and of high water, it served to carry forward and below plaintiff's lands a portion of the water coming down the channel of the main stream. It was a water way beginning in and ending in Shoal creek, through which Shoal creek waters flowed. It was therefore no misnomer to call it Shoal creek in the instructions, nor could the jury have been misled by so naming it, for it was the Shoal creek or slough— or call it what you may—that the defendant had dammed up by building an embankment across. There is no pretense that any other Shoal creek or slough was dammed up; the jury could not have inferred that the main stream was meant; if they had,

their verdict would have been for the defendant, for there was no proof whatever that the main stream had been dammed up by the embankment.  The error, if error it is, was one which did not in the least predjudice the defendant, nor as we have seen, could the jury have been misled by it.  I think the judgment should be affirmed.