MAGGIE E. GOLL, Administratrix, et al., Appellants, v. CHICAGO & ALTON RAILWAY COMPANY.

Division Two, July 16, 1917.

1. **OVERFLOW WATERS: Embankment Against Overflow.** A railroad company may change the surface of its right of way by raising it to a higher grade, or by the removal of existing trestles and filling the spaces with earth and rock, and thereby cause water to accumulate from natural causes on adjacent land or on land on the opposite side of the river, or prevent it from passing off over or through the right of way, without being liable in damages to the owner of such land for injuries resulting from said lawful appropriation. It is neither negligence nor unskillfulness at Common Law for the owner to embank against surface waters flowing onto his land from adjoining land. The opposite rule of the Civil Law is not the law in this State.

2. ———: **Surface Water.** Overflow water from streams and rivers in Missouri is surface water.

3. ———: ———: **Channel of River.** The owner or person in possession has the right to prevent the waters of the Missouri River from overflowing his land, provided he does not by his embankment or other construction on his land change the channel of the river.

4. ———: **Statute: Obstruction.** The statute (Sec. 3150, R. S. 1909) cannot be construed to require that openings shall be made in the railroad roadbed to let pass water out of a river whose channel has not been obstructed. The purpose of that statute is to get rid of the surface water and the water of streams which would be obstructed by the roadbed, and prevented from running into a water course.

Appeal from Lafayette Circuit Court.—*Hon. Samuel Davis,* Judge.

AFFIRMED.

*John D. Taylor* and *Aull & Aull* for appellants.

(1) The first count in plaintiffs' petition is based upon Sec. 3150, R. S. 1909. (2) By legislative enactment, since 1883, the right to recover damages for fail-

ure to maintain ditches and drains has been assured to every person suffering injury by such failure. R. S. 1889, sec. 2614; Laws 1891, p. 82; R. S. 1899, sec. 1110; Laws 1907, p. 169; Laws 1909, p. 359; R. S. 1909, sec. 3150; Cox v. Railroad, 174 Mo. 600. (3) The courts have long recognized the right of any person suffering injury because of failure of the railroad company to observe the provisions of section 3150, to recover damages for such neglect of duty. Cox v. Railroad, 174 Mo. 605; Byrne v. Railroad, 47 Mo. App. 383; Greer v. Railroad, 173 Mo. App. 293; Skinner v. Railroad, 162 S. W. 23, ; Tranbarger v. Railroad, 250 Mo. 46. (4) When waters overflow the banks of their regular channel and spread over adjoining territory they become surface water and may be treated as such. Abbott v. Railroad, 83 Mo. 271; McCormick v. Railroad, 57 Mo. 438; Schneider v. Railroad, 29 Mo. App. 71; Jones v. Railroad, 18 Mo. App. 257. (5) The common-law rule with regard to surface water which is in force in this State has been modified by the enactment of section 3150. Cox v. Railroad, 174 Mo. 606; Tranbarger v. Railroad, 250 Mo. 46; Hays v. Railroad, 177 Mo. App. 201. (6) Claims for damages founded on the statute and on the common law may be joined in the same petition if stated in separate counts. McHugh v. Company, 190 Mo. 85; White v. Railroad, 202 Mo. 560; Clark v. Railroad, 242 Mo. 595; Senn v. Railroad, 135 Mo. 519. (7) The common-law rule as to surface water as declared in this State is: "Persons exercising the right to fence against surface water to improve or ameliorate the condition of their own land, must exercise it in a careful and prudent manner." 3 Farnham on Waters, 2655; Goettenetroeter v. Cappleman, 83 Mo. App. 290, 88 Mo. App. 449; Cox v. Railroad, 174 Mo. 588. (8) The mere fact that railroad works are constructed in a proper manner for the purpose of operating a railroad does not relieve the company from liability in case injury is done to others. 3 Farnham on Waters, 2655. (9) Defendant by its demurrer admits that it has dammed up two natural water courses, Shockley's Branch and Fish Creek. It is the established law in

this State that when water reaches the flood channel by a regular channel and finds its way to an outlet this channel must be regarded as a part of the stream and cannot be interfered with. Webb v. Carter, 121 Mo. App. 155; Stan v. Railroad, 121 Mo. App. 547; Beaucamp v. Taylor, 132 Mo. App. 195; 3 Farnham on Waters, sec. 888, p. 2564.

*Scarritt, Scarritt, Jones & Miller* for respondents.

(1) The first count of the petition is based upon the statute. Plaintiff is not a riparian owner along Fish Creek and Shockley's Branch and has no right to complain of the obstruction or diversion of the waters thereof. In the second place, there is and could be no claim that the waters of these streams, were backed or diverted upon plaintiff's land, as the latter is upon the opposite side of the Missouri River. The clear and only charge of the petition is that waters of the Missouri River, not of Fish Creek, backed upon and overflowed plaintiff's land. All doubt, however, concerning the petition is removed by the repeated statement in plaintiff's brief that his first count is based upon sec. 1110, R. S. 1899, as amended by the Laws 1907, p. 169. Prior to 1907 the statute did not require railroads to construct any openings for water drainage through their railroad embankments and rights of way, but only required lateral ditches along the railroad. Sec. 1110, R. S. 1899; Collier v. Railroad, 48 Mo. App. 398; Schneider v. Railroad, 29 Mo. App. 68. (2) Amended Statute of 1907 is an *ex post facto* law, hence unconstitutional and void. McCormick v. Railroad, 57 Mo. 433; Benson v. Railroad, 78 Mo. 504; Jones v. Railroad, 84 Mo. 151; Sec. 10, art. 1, U. S. Constitution. This act of 1907, declares unlawful and prescribes a penalty for a thing done in the past and which was not unlawful at the time it was done. Such an act comes clearly within the meaning of the term "*ex post facto* law" as used in section 10 of article 1 of the Constitution of the United States and is therefore violative of said provision, which forbids any state to

271 Mo.—42

enact an *ex post facto* law.  Calder v. Bull, 3 Dall (U. S.), 386; Fletcher v. Peek, 6 Cranch, 137; State v. Glover, 41 Mo. 370; Duncan v. State, 152 U. S. 377.  (3) The Act of 1907, upon which this suit is based, violates both the Federal Constitution and the Constitution of this State in that it takes the property of defendant railroad company without due process of law, or any process of law, and also without any compensation.  Railroad corporations hold their property under the same constitutional guarantee as do individuals.  Telephone Co. v. Railroad, 202 Mo. 56.  Acquiring an easement or right of way is the taking of property.  Matter of Cheesbrough, 78 N. Y. 232; Railroad v. Commissioners, 63 Ohio St. 23; Drainage District v. Shroer, 145 Ind. 572; Railroad v. Hough, 61 Mich. 507.  The Act of 1907, in question here, not only takes a right of way for a drain across the railroad, but requires the railroad company to construct the drain, at its own expense.  The books are full of cases holding that any law attempting to take or procure the right of way for a drain without due process and compensation paid to the landowner, across whose land it is proposed to run the drain, is violative of the Federal Constitution, among which cases we cite the following: Matter of Cheesebrough, 78 N. Y. 232; Railroad v. Hough, 61 Mich. 607; Railroad v. Commissioners, 63 Ohio St. 23; Watson v. Pleasant Twp., 21 Ohio St. 667; Askam v. King, 9 Wash. 1; People v. Nearing, 27 N. Y. 306; Drainage Dist. v. Shroer, 145 Ind. 572; In re Drainage Dist., 90 Wis. 301; Railroad Co. v. Chappell, 124 Mich. 72.  The taking of an easement or right of way for drainage purposes is a matter of eminent domain rather than the exercise of the police power of the State.  Kinne v. Bare, 68 Mich. 625; Rendering Co. v. Behr, 77 Mo. 91.  (4) Plaintiff has no case because the land is not contiguous to or adjoining defendant's railroad.  Cox v. Railroad, 174 Mo. 603; Byrne v. Railway Co., 47 Mo. App. 388; Raney v. Railroad, 137 Mo. App. 545.  (5) Plaintiff's petition fails because it does not show that since the Amended Act of 1907 there has existed any drain or watercourse with which defendant's

railroad might connect its ditches or openings for water. Kenney v. Railroad Company, 69 Mo. App. 571. (6) This statute was designed to care for ordinary drainage, not to protect against great floods. The statute was only intended to require a railroad company to provide for the ordinary and usual flow of water as it existed before the construction of the railroad. James v. Railroad, 69 Mo. App. 431; Coleman v. Railroad, 36 Mo. App. 476; Ellet v. Railroad, 76 Mo. 518. (7) Unquestionably the overflow water from the Missouri River which ran upon plaintiff's land was surface water. Abbott v. Railroad, 83 Mo. 280; McCormick v. Railroad, 57 Mo. 438; Schneider v. Railroad, 29 Mo. App. 71; Jones v. Railroad, 18 Mo. App. 257. (8) As to "surface water" the common law is in force in this State,which is that surface water is a common enemy, against which each and every landowner may protect his land and property thereon as best he can without being answerable to adjoining landowners for the result. Abbott v. Railroad, 83 Mo. 271. (9) A railroad company is within the protection of the rule of the common law and may construct a solid embankment along its right of way upon which to lay its tracks and does not become answerable in damages in case surface water is thereby dammed up or diverted onto the land of another. Graves v. Railroad, 69 Mo. App. 578; Cox v. Railroad, 174 Mo. 588, 606; McCormick v. Railroad, 57 Mo. 437; Harrelson v. Railroad, 151 Mo. 482; Schneider v. Railroad, 29 Mo. App. 68; Collier v. Railroad, 48 Mo. App. 401; Jones v. Railroad, 84 Mo. 155. (10) The question has arisen in a number of cases in this State as to whether or not the construction of such a solid embankment across low lands by a railroad company could be deemed negligence or a reckless disregard of the rights of others, and in every such case it has been held that the railroad company in building such an embankment on which to lay its tracks acted fully within its legal rights and could not be held as doing a negligent or careless act. Schneider v. Railroad, 29 Mo. App. 68; Collier v. Railroad, 48 Mo. App. 398; Har-

relson v. Railroad, 151 Mo. 497; Jones v. Railroad, 13 Mo. App. 253; Jones v. Railroad, 84 Mo. 151.

ROY, C.—Plaintiffs sued for damages caused by overflow of land, alleging that such overflow was caused by the building of the embankment for the defendant's railroad. A demurrer to the petition was sustained, and there was a judgment accordingly, from which plaintiffs have appealed.

The parties have not furnished us with any plat of the situation, but we have made one in accordance with the facts so far as they appear to us, as follows:

We have not shown Fish Creek on that plat, for the reason that its relative position is not shown by the petition or by the statement of the appellants.

The plaintiffs sue as the heirs and the administratrix of the estate of Henry Goll, deceased, who owned the land in the year 1909 at the time of the alleged overflow. There were two hundred and eighty acres of the land. The material parts of the petition are as follows:

"That at the point on said river where defendant's railroad crosses the same the channel of said river is so narrow that it does not afford a sufficient outlet for all of the water flowing into said river from up stream, from said point in any ordinary freshet or rainy season.

"That in the original construction of said railroad where the same crosses the bottom land adjacent to and west of said river, for a distance of nearly five miles to a point where the high land is not subject to overflow, is reached, defendant caused trestles to be constructed at intervals whereon its ties and rails were laid, thus and thereby affording ample outlet for water from the Missouri River coming up stream and overflowing the banks of the river, which were thereafter collected into and flowed southward through Shockley's Branch and Fish Creek, two efficient and adequate drains through which the said overflow waters found its way across the said bottom and into the Missouri River, a short distance south of defendant's roadbed. That thereafter defendant negligently and wrongfully dammed up both of the said streams and wrongfully erected in lieu of the trestle works which constituted a rest and support for its ties and rails aforesaid, and which afforded ample and efficient openings through the road-bed an outlet for the water which overflowed the banks of the river aforesaid and prevented the backing up of said water on plaintiff's land, a high strong embankment made of earth and stone extending across the entire bottom lands and adjacent to the said river from the west bank thereof, to the high land not subject to overflow, thus and thereby completely obstructing both of the aforesaid drains and rendering the free and uninterrupted natural and efficient flow of said water carried by said stream in times of ordinary freshets and rainy seasons, impossible, and caused the said water to be blocked and to be pre-

vented from flowing, and to be backed up on the lands of plaintiff near said bank and to the northward thereof.

"That defendant has not since the year 1900 maintained any openings through and across its roadbed or any ditches or drains along the north side of its right of way, connected with openings through and across its roadbed, connected with natural drains aforesaid, in which manner the said overflow water from the Missouri River could and would be carried off, which said openings and connecting ditches could and would have prevented the said water from backing upon and overflowing the lands of the plaintiffs as aforesaid.

"Plaintiffs say that the two aforesaid drains were ample and sufficient to carry the said overflow waters of the Missouri River and to prevent the same from backing up and overflowing plaintiff's said land, had defendant constructed proper and adequate openings through its said roadbeds and ditches along its said right of way connectedwith said drains and had constructed proper and adequate drains along the north side of said roadbed connected with said openings.

"That during the month of June, 1909, because of said embankment so constructed and maintained by defendant as aforesaid, the water of the Missouri River was caused to back upon and overflow and completely inundate two hundred and eighty acres of plaintiff's farm land, destroying his crops, drowning and otherwise injuring his live stock and damaging and injuring his buildings, fences and orchards on said land and injuring his said land in its actual and selling value as follows:

| | |
|---|---:|
| 74 acres of corn of the value of ...... | $2211.00 |
| 99 acres of wheat of the value of .... | 3465.00 |
| 1 acre of potatoes of the value of .... | 100.00 |
| Hay of the value of ............... | 100.00 |
| Meadow of the value of ........... | 50.00 |
| Ice of the value of ....,.......... | 50.00 |
| Injury to buildings, fences, orchards, stock, etc. ..................... | 4200.00 |
| Total | $10176.00 |

"Plaintiff further states that by the use of ordinary care and by the expenditure of ordinary sums of money, defendant's railroad built, constructed and maintained across the bottom lands aforesaid, could have been so built, constructed and maintained as to afford ample outlet for the overflow water aforesaid, by maintaining sufficient openings through its roadbed and across its right of way connected with the two aforesaid drains and by maintaining sufficient ditches along the north side of the roadbed, connected with said openings; but that defendant negligently and wrongfully failed, neglected and refused to maintain such openings and such ditches, which said failure of defendant caused the overflow of said plaintiff's land, and the damage that resulted to him as aforesaid.

"Wherefore, plaintiff prays judgment against the defendant on the first count of his petition in the sum of $10,176, and for his costs in this cause expended."

The second count of the petition is a suit for damages at common law growing out of the same overflow.

Appellant's statement contains the following:

"The Missouri River running in a west to east direction constitutes the south boundary line of Chariton County, and from that point where appellant's lands are located, across the south part of the county, the west-to-east line is almost direct. On the east side of Chariton County, and about half a mile north of the town of Glasgow, the Missouri River makes a very sharp turn, and flows past the town of Glasgow in practically a southern direction. At the south side of the town of Glasgow the Chicago & Alton Railway Company has built its bridge east and west across the Missouri River at the narrowest point in the Missouri River channel between Kansas City and St. Louis. Its roadbed runs practically parallel with the Missouri River from the west end of the Glasgow bridge to a point known as Gilliam Hill five miles and a half west therefrom, on the south or Saline County side of the Missouri River.

"Appellant's lands are located at a point about five miles north and west of the central portion of this five-

and-a-half-mile stretch of respondent's roadbed on the north side of the river in Chariton County.

"The land over which respondent's road is built from the west end of Glasgow bridge to Gilliam Hill is very low, and has been subject to overflow from the Missouri River from time out of memory. In 1873 when the railroad was first built across this land a trestle six hundred feet in length was constructed at the west end of the bridge. About one mile out a trestle eighty feet long was constructed in the road bed; about two and a half miles from the west end of the bridge a trestle one hundred and twenty-five feet long was built in the roadbed; about one mile from there another eighty-foot trestle was constructed and a trestle one hundred and twenty-five feet long was constructed in the roadbed at the foot of Gilliam Hill. At the time of this construction a small stream came down from the hill lands and flowed north through the trestle at the foot of Gilliam Hill, flowed eastwardlly parallel to the track and between the track and the Missouri River to the second one-hundred-and-twenty-five-foot trestle, flowed south through that trestle and in a southeasterly direction until it struck Fish Creek and the water found outlet in the Missouri River near Saline City some five or six miles south of the town of Glasgow.

"Sometime in the latter eighties, respondent caused its roadbed to be so modified and constructed that all of these trestles were filled, damming the streams, and a solid embankment was maintained from Gilliam Hill to a point within six hundred feet of the west end of the Glasgow bridge, and about the year 1900 they further modified the construction of the roadbed by filling the trestle work at the west end of the bridge, so that since about the year 1900 they have maintained their roadbed from the west end of the Glasgow bridge to Gilliam Hill, a distance of five and one-half miles, at an average height of nine and one-half feet across these low bottom lands subject to overflow without a single solitary opening of any kind or character through their roadbed."

I.  It does not appear that the smaller streams mentioned in plaintiffs' petition have any connection with the river north of the railroad.  If either of those smaller streams extended from the channel of the river north of the railroad across the railroad to the river again on the south, and if defendant's roadbed obstructed such channel, there would be a different case here to consider.  But, so far as is shown by the petition and the statement of plaintiffs' counsel, there is a strip of land between the channel of the river and those smaller creeks.  It should not be overlooked that the land of plaintiffs is north of the river.  The plaintiffs are not concerned in the land or the creeks south of the river except insofar as the damming of the water in the creeks, and the shutting off of the overflow water across the intervening strip, may prevent the river from overflowing southward, thus causing the overflow of plaintiffs' land.  In other words, the whole merits of the plaintiffs' case would have been presented if the petition had simply stated that the defendant had constructed its roadbed along and on the south bank of the river, without any openings therein and of such a height as to shut off the overflow to the south, and to thus increase the rise in the river so as to overflow plaintiffs' land on the north.  If the plaintiffs have no rights under the supposed case, then they have none under the case alleged in the petition.  We will proceed to consider the supposed case, as that is clearer than the one stated, being free from any complications with the smaller streams or with the overflow of the intervening space.

*The Point at Issue.*

II.  The common law rule as to surface water  is stated in Angell on Watercourses (7 Ed.), sec. 108a, thus:

"A conterminous proprietor may change the situation or surface of his land by raising or filling it to a

higher grade, by the construction of dikes, the erection
of structures, or by other improvements
**Embankment** which cause water to accumulate from nat-
**on** ural causes on adjacent land and prevent it
**Owner's**
**Land.** from passing off over the surface. Such
consequences are the necessary result of
the lawful appropriation of land, whatever may be its
nature, and although they may cause detriment and loss
to others.''

We are aware that it is sometimes said that in mak-
ing such embankments there must be no negligence or
unskillfulness. It has been said that one proprietor can-
not collect the surface water on his premises and turn it
in a stream onto his neighbor's land. But it has never
been held to be negligence or unskillfulness at common
law for one proprietor to embank against surface water
flowing onto his land from the adjoining land, but, on
the contrary, his right to so protect himself has been
uniformly vindicated by that law.

Prior to 1879 that rule was uniformly followed as
the law in this State. [Clark's Admr. v. Railroad, 36
Mo. 202; Jones v. Hannovan, 55 Mo. 462; Hosher v.
Railroad, 60 Mo. 329.]

But in McCormick v. Railroad, 70 Mo. 359, and in
Shane v. Railroad, 71 Mo. 237, that rule was abandoned
and the contrary rule of the civil law was applied,
HOUGH, J., dissenting in both cases.

The opinion in Abbott v. Railroad, 83 Mo. 271, cited
those cases and said:

''In the last two cases it was distinctly held, by a
divided court it is true, that 'a landowner has no right,
by erecting an embankment, to stop the natural flow of
surface water or to divert its course so as to throw it
upon the land of his neighbor,' thus discarding the old
common-law rule on this subject, so long recognized and
so often approved, and substituting therefor the rule of
the 'civil law.' With all due respect for the acknowl-
edged ability of the distinguished jurist who wrote those
opinions, we feel constrained to recognize the common-
law doctrine on this subject, so often and repeatedly ap-

proved by this court, without division, in all its earlier and later decisions, as still the law in this State. The rule of the common law, as expounded in the numerous decisions quoted above, we think, after all, best promotes and conserves the varied and important interests of both the public and private individuals incident to and growing out of this question. It permits and encourages public and private improvements, and at the same time restrains those engaged in such enterprises from unnecessarily or carelessly injuring another.''

Since then that rule of the common law has been observed as the law of this State. [Jones v. Railroad, 84 Mo. 151; Moss v. Railroad, 85 Mo. 86; Walther v. Cape Girardeau, 166 Mo. App. 467.]

III.  At the time of the adoption of the common law in the Territory of Missouri in 1816, there was no decision of any court in England on the question as to whether, by such common law, the overflow water from rivers and streams was surface water. But in Rex v. Trafford, decided in 1831 in the Court of King's Bench, and reported in 20 Eng. C. L. R. 498, and also reported in 1 B. & Ad. 874, Lord TENDERDEN, C. J., held that the overflow water of a stream was a part of the stream and that it could not be obstructed as surface water.

*Surface Water.*

On writ of error to the Court of Exchequer Chamber that case was reversed, but on other grounds, and the law as to overflow water as stated by Lord TENDERDEN was approved, 21 Eng. C. L. R. 272.

1 Kinney on Irrigation and Water Rights (2 Ed.), sec. 319, says:

''By the common law, flood water overflowing the banks of a stream is a part of the stream, although not flowing in the channel. The decisions in this country are in hopeless conflict upon the subject, and cannot be reconciled, as those of certain states are diametrically opposed to those of others. Indiana, Missouri, Kansas and Washington treat the flood waters of the streams as sur-

face waters, to be dealt with as such, according to the
rule prevailing in those states."

McCormick v. Railroad, 57 Mo. 433; Kenney v. Railroad, 74 Mo. App. 301, and Schneider v. Railroad, 29
Mo. App. 68, are there cited as upholding the rule that
such overflow water is surface water. That rule was also
recognized in Abbott v. Railroad, 83 Mo. l. c. 280.

It is thus seen that, after our adoption of the common law, the new question arose both in England and in
Missouri as to whether overflow water is surface water.
The English courts answered it in the negative, while
the courts of this State have, in four cases, taken the
opposite position. We feel a degree of confidence in
suggesting that as the rule of the English courts may be
the best as applied to the streams and fields of that
country, so the opposite rule as followed in this State is
more in harmony with the needs of our situation. In the
absence of a good reason for a change, law, like water,
should be kept as near as possible within its old and
well defined channels, and we shall hold fast to our rule
that overflow water in Missouri is surface water.

IV. As any landowner or person in possession of
land has the right at common law, as construed in this
State, to shut overflow or surface water off his
land, so, by such law, the defendant has the
right to shut the overflow water of the river
from its right of way provided it does not
interfere with the river channel. There is no claim here
that there is any interference with the river channel.

**Channel of River.**

V. It remains to be considered whether the defendant is liable under section 3150 of our Revised Statutes.
We will presume, without deciding, that a person owning land not adjoining defendant's right of way may sue
under such section. However, we cannot overlook the
fact that the river runs between the railroad and plaintiff's land. The section of the statute under consideration very clearly shows a purpose to get rid of the surface water and the water of streams which would be obstructed by the roadbed, and prevented from running

into a watercourse. That section, in our judgment, cannot be construed to require that openings shall be made to let the water out of a river whose channel has not been obstructed. The whole purpose of our drainage laws seems to be to get the water into the rivers and to keep it there. We concede that the Legislature may provide that no person or railroad company may obstruct the overflow of streams, but it has not yet done so, at least in such a way as to affect this cause.

The judgment is affirmed. *White*, C., concurs.

PER CURIAM:—The foregoing opinion of Roy, C., is adopted as the opinion of the court. All of the judges concur.