NELLIE W. COGGINS, et al., Respondents, v. THE
ATCHISON, TOPEKA & SANTA FE RAILWAY
COMPANY, a Corporation, Appellant.*

In the Kansas City Court of Appeals, November 5, 1923.

1. **DRAINS: Ditches: Railroads: Ditch or Drain Need not Have Well
   Defined Banks to Render Defendant Liable, Within Statute, for
   Obstructing the Same.** Obstruction of water need not be by a
   ditch with well defined banks to render defendant liable for ob-
   structing same within section 9953, Revised Statutes 1919, requir-
   ing suitable openings across and through the right of way and
   suitable ditches and drains or watercourses to afford sufficient
   outlet to drain and carry off water, including surface water, along
   right of way whenever the draining thereof has been obstructed or
   necessary by construction of a railroad.

2. ———: ———: ———: **Whether Sewer Pipe Placed in Embank-
   ment was Sufficient Drain for Surface Water Held Question for Jury.**
   Where evidence was contradictory as to whether a sewer pipe
   placed in an embankment by railroad company was low enough
   to be effective as a drain for surface water, as required by section
   9953, Revised Statutes 1919, *held* question for jury.

3. ———: ———: ———: **Instruction Directing Verdict for Failure
   of Railroad to Construct Opening as Outlet for Water, as Required
   by Statute, Held Proper.** In an action for damages to plaintiff's
   crops on account of overflow of lands caused by failure of defend-
   ant to construct and maintain openings through its roadbed as
   outlet for water, where evidence showed there was a stream on
   the opposite side of railroad embankment into which water would
   flow through proper openings and the existence of a swale and
   ditch dug therein on plaintiff's side of embankment with which
   an effective drain could connect, *held* there was no error in giving
   instruction directing finding in favor of plaintiff for failure of
   defendant to construct said openings as required by section 9953,
   Revised Statutes 1919.

4. **DAMAGES: Excessive: $1199.99 Being Full Amount Prayed for
   Damages to Crops from Overflow Held not Excessive.** In an action
   for damages to crops on account of overflow of forty-six acres of
   land, where evidence showed the number of acres planted to corn
   and wheat each year, that in 1920 the crop was entirely destroyed

and partially destroyed in 1921, and the amount of yield on similar land and value per bushel of crops raised each year, the fact that verdict rendered was for full amount prayed was not, in itself, evidence of an excessive finding.

*Headnote 1. Waters, 40 Cyc, p. 661; 2. Waters, 40 Cyc, p. 661; 3. Waters, 40 Cyc, p. 661; 4. Waters, 40 Cyc, p. 661.

Appeal from Circuit Court of Ray County.—*Hon. Ralph Hughes,* Judge.

AFFIRMED.

*George W. Crowley, John C. Jacobs* and *Milligan & Thompson* for respondents.

*Cyrus Crane, Geo. J. Mersereau, John H. Lathrop, A. M. Clark* and *S. J. & G. C. Jones* for appellant.

ARNOLD, J.—This is an action for damages to plaintiffs' crops on account of overflow to their lands. Plaintiff Nellie W. Coggins and her children, viz., Charles H. Pemberton, Jefferson D. Pemberton and Thomas C. Pemberton, a minor, are the owners of forty-six acres of land in Jackson County, Mo., described as the south side of the north half of the Southeast quarter, section 29, Township 51, Range 30.

The petition alleges there were crops of wheat and corn on said lands in the years 1920-21, that said crops were overflowed by water and destroyed during said years, and that the said lands were located south of defendant's railroad embankment. The cause of action is bottomed upon an alleged violation of the provisions of section 9953, Revised Statutes 1919, and charges a failure to construct and maintain suitable openings through and across the right of way and roadbed of defendant's railroad, and failure to construct suitable ditches and drains alongside the railroad so as to afford sufficient outlet

to drain and carry off the water, including surface water along said railroad adjacent to and near the land of plaintiffs, and that for a long time there have been other ditches, drains and watercourses adjacent to the said railroad with which such drains and ditches could' have been connected.

The testimony shows the railroad embankment runs practically east and west, with a tendency to the northeast and southwest. Plaintiffs' land is composed of two twenty-three acre tracts adjacent east and west. The east tract extends from the railroad embankment to a high bluff on the south, while the west tract is joined by lands of one D. W. Auld on the south and west sides thereof and therefore does not extend south to the bluff. The said high bluff makes a half circle beginning at the east extremity of the east twenty-three acres where Mrs. Coggins' home is located and where it joins the railroad right of way, thence running in a half circle to the south and west, taking in the Auld property, as well as plaintiffs and coming back to the railroad west on the Auld property, thus completing the half circle. This bluff is about 100' to 150 feet higher than the general surface of the land. The cove inside the semi-circle is approximately a half mile at its center from the bluff to the railroad embankment, which is eight to ten feet in height. The base of the semi-circle bordering on the railroad is about one mile in length. It appears the land within this crescent is comparatively level, sloping slightly from the bluff toward the railroad, the variance in the surface elevation being probably a foot and a half.

It is shown that the lowest portion of this land, prior to clearing the timber therefrom, always had some water standing thereon. This low place extended to the north and west, and water therefrom passed through the Auld land and out into the river west of the place where there is now a sewer pipe under the railroad embankment. Further it is shown by the evidence that this condition existed prior to the building of the railroad, about 1887,

at which time the water flowed without obstruction into the Missouri River which was then immediately north of the railroad right of way. The river has changed its course since that time and the Little Blue river now has practically the same bank as the Missouri river formerly had. The testimony further shows that the railroad embankment is continuous from one point of its contact with the bluff to the other, thus closing up the lands contained in the semi-circle above mentioned.

Prior to the construction of the railroad the surface water which accumulated in said low place, or swale, drained into the river. After the railroad was built the owner of the land constructed a ditch which followed the general deviation of the swale, a distance of about 900 feet, for the purpose of carrying the water in the direction of the railroad embankment to the sewer pipe which was designed to carry the overflow water into the river on the north side thereof. This sewer pipe extends through the railroad embankment (which is wide enough to carry two railroad tracks), and is somewhat higher at the south than at the north end. In addition to this sewer pipe there was constructed for the full length of the embankment—the exact length of which is not in evidence—a ditch, or "borrow pit" designed to catch the overflow water and hold it until it could be carried off through the sewer pipe. The ditch constructed by the owner of plaintiffs' land connects with this borrow pit. It is charged the sewer pipe is not set low enough to carry away the water which accumulates on the land in question, and that the provisions made by the railroad company for relieving this overflow are not adequate, and do not conform to the requirements of the statute (sec. 9953, R. S. 1919), and as a result thereof, plaintiffs' crops on said land were destroyed, as stated above.

The petition is in three counts, the second seeking damages in the sum of $1000 for the year 1920 and the third asking damages in the sum of $199.99 for the year

1921.  The first count was dismissed and the cause went to trial on the other two.  The answer is a general denial as to these charges and the reply likewise is a general denial.  The cause was tried to a jury in the circuit court of Ray County and resulted in a verdict for plaintiffs in the amounts prayed.  At the close of plaintiffs' case, and again at the close of all the evidence, defendant offered an instruction in the nature of a demurrer, which the court refused.  Motions for new trial and in arrest were unsuccessful and defendant appeals.

First, under its assignment of errors it is urged the court erred in refusing to sustain the demurrers offered by defendant.  In the discussion of this point it is necessary to examine the statute under which the suit was brought (sec. 9953, R. S. 1919), wherein railroads are directed "to cause to be constructed and maintained suit-able openings across and through the right of way and roadbed of such railroad, and suitable ditches and drains along each side of the roadbed of such railroad, to connect with ditches, drains or watercourses, so as to afford sufficient outlet to drain and carry off the water, including surface water, along such railroad whenever the draining of such water has been obstructed or rendered necessary by the construction of such railroad."

Defendant argues the burden is upon plaintiffs to prove that there existed ditches, drains and watercourses with which, and to which, side or lateral ditches along the right of way could have been connected, and that there should have been a ditch, or watercourse, with well-defined banks with which the railroad company might connect the openings through the roadbed.

As stated above, the testimony shows, and it is not contradicted, that originally the Missouri River, and now the Little Blue River, was adjacent to the railroad embankment on the north side thereof.  Defendant urges that the water obstructed must be a ditch with well-defined banks before defendant may be held liable for obstructing the same.

This question arose in the case of Murphy v. Railroad Co., 205 Mo. App. 682, and was thoroughly discussed by this court. It is said in the opinion, at p. 689:

"The claim that the drain is not within the purview of the statute seems to rest upon more than the mere fact that it is not a watercourse in the sense of a running stream with well-defined banks. It is well-defined but is not a ditch or a running stream. It does not have to be such to come within the statute. [Pace v. St. Louis, etc., R. Co., 174 Mo. App. 227, 232.]"

The statute is clear in its requirement that the owners and operators of railroads shall construct and maintain suitable openings through and across their rights of way to connect with "ditches and drains or watercourses," so as to afford sufficient outlet to carry off the water, including surface water, whenever the draining of such water has been obstructed or rendered necessary by the construction of such road. It must be conceded that a ditch or drain has no technical meaning, but the words have been defined to mean "a hollow or open space in the ground, natural or artificial, where water is collected or passes off."

In the case at bar, the depression, or swale, on the surface of the land in question was clearly defined, as the testimony shows, and especially was this true after the construction of the ditch. We take it that it is immaterial what the physical characteristics of such ditch or drain may be, and it is in evidence that the ditch made by the owner of plaintiffs' land after the construction of the railroad embankment, answered the purpose of a drain. The statute requires the railroad to maintain openings and connecting ditches so as to permit the water to pass off. The evidence shows there is, in fact, no running stream on the land which the railroad embankment dams up, but under the ruling of the Murphy case, *supra*, that is not required to bring the case within the purview of the statute. This point was discussed also in Goll v. Railroad, 271 Mo. 655, 197 S. W. 244; Vanlandingham v. Railroad,

206 S. W. 399; Adair Drainage Dist. v. Railroad, 217 S. W. 70.

The principal contention in this case seems to be as to whether the sewer pipe placed in the embankment by the railroad company is low enough to be effective in the purpose for which it was intended. The testimony on this point is contradictory and the question was for the jury. Under the facts presented by the record, there can be no doubt but that the evidence of plaintiffs was sufficiently substantial to entitle them to go to the jury. The refusal of the court to sustain the demurrers offered by defendant was not error.

It is further charged the court erred in giving instructions 1 and 2 for plaintiffs, directing a finding in their favor for the alleged failure of defendant to construct opening through its roadbed "for there was no evidence showing any ditches, drains or watercourses whatever with which such openings would connect." It is further objected that these instructions directed a finding in favor of plaintiffs on account of failure to construct lateral ditches, there being no evidence in the record that there existed drains, or watercourses, with which to connect such side or lateral drains.

We think defendant's position in this respect untenable. It was amply shown by the evidence that there is a stream on the north side of the embankment, to-wit, the Little Blue River, into which the water would flow through proper openings. Further, as stated above, the testimony shows the existence of a swale and the ditch dug therein on the south side of the embankment with which an effective drain could be made to connect. We hold against defendant's position in this respect.

Finally, it is charged plaintiffs failed to furnish to the jury sufficient, reliable and trustworthy evidence of the extent of the damages, and that the verdict is excessive. The record shows there was evidence as to the number of acres planted to corn and wheat each year for which damages are asked; that in 1920, the crop was

entirely destroyed and that it was partially destroyed in 1921. There was evidence as to the amount of the yield on similar land, and the value per bushel of the crops raised each year. No evidence was offered to refute this testimony. A simple mathematical calculation is all that is necessary to show that the verdict is not excessive. The fact that the verdict rendered was for the full amount prayed in the petition is not, in itself, evidence of an excessive finding. This is one point raised against the verdict. It is also charged that the evidence does not justify the amount of the verdict, but wherein the evidence fails in this respect is not specified.

Finding no reversible error in the case, the judgment is affirmed. All concur.