**ATCHISON, T. & S. F. RY. CO.
v. TAYLOR et al.**

No. 314.

United States District Court
E. D. Missouri,
N. D.

Dec. 1, 1949.

Sam D. Parker and Donald H. Sharp, of the firm of Lathrop, Crane, Woodson, Sawyer & Righter, Kansas City, Missouri, Elgin Fuller and Ben Ely, of the firm of Fuller, Fuller & Ely, of Hannibal, Missouri, for plaintiff.

Wayne E. Wheeling and L. E. Merrill, of Brunswick, Missouri, Roy Hamlin, of Hannibal, Missouri, Arch Scott, of Carrollton, Missouri, for defendants.

HARPER, District Judge.

The plaintiff seeks a declaratory judgment against thirteen individual defendants and two drainage districts. After the suit was filed seven individuals intervened as defendants, making a total of twenty individual defendants, all of whom filed counterclaims. The individual defendants had previously asserted claims that the railroad was liable for flood damage occurring in the spring of 1947. This suit was filed in an effort to avoid a multiplicity of suits arising out of the 1947 flood. The trial was segregated into two portions, and in the trial of the first portion all evidence of all parties pertaining to the liability of the plaintiff for the damages claimed by the defendants was introduced, and the question of the liability of the plaintiff, if any, was to be determined. If at the conclusion of the first portion it was determined the plaintiff was liable to any or all of the defendants, then at the trial of the second portion the question of the amount of damages was to be determined by a jury.

A picture survey of the area in which the action arose and the location of the parties' properties will be helpful. The Grand River west of the area in question runs southwardly, crossing plaintiff's railroad embankment near Mile Post 370 (M.P. 370). The railroad embankment extends, as far as area in issue involved, in a northeast-southwesterly direction from M.P. 359 (J. R. Fox owner) to the Grand

River crossing. Whitham is near M.P. 365, and the tracks of the Wabash railroad approximately a half mile further west. The Wabash railroad runs in virtually a direct north-south direction. The height of the railroad embankment for the eleven miles in question varies from two to twenty feet, the extreme depth occurring at the Wabash crossing, the plaintiff's railroad being an overhead crossing. North of the railroad embankment lies the property of complaining parties. The property is bottom land which lies in the flood plain of Grand River and of Yellow Creek. North of this property, half looping in a northwesterly direction, just at the area involved, until making confluence with Grand River, is Yellow Creek. The two water courses converge in lean-to fashion with defendants' property in a triangle below them. Immediately south of Grand River at places virtually adjoining the two water courses lie levees constructed for protection of the land south of them. The levee south and east of Grand River is the Garden of Eden construction completed in 1922. To the south and west of Yellow Creek is the Whitham levee built in 1903, and raised after the 1909 flood. Elk Creek and Turkey Creek converge and flow from the north into Yellow Creek, and Hickory Creek flows from the south into Yellow Creek. Swan Lake lies about four miles north of the Whitham levee, and Silver Lake about two miles northeast of the Whitham drainage district's eastern boundary. Dean Lake lies at the western convergence of plaintiff's railroad crossing. Salt Creek drains the major portion of the Whitham drainage district, and at its closest point to defendants' property is approximately 2.2 miles south of the railroad embankment. Salt Creek enters Grand River approximately eight miles south of the property of defendants.

The plaintiff's case rests on its endeavor to prove that the property and crop damage suffered by complaining defendants was, in a general sense, the result of an Act of God which it neither caused nor contributed to in aspect of damage resulting, through failure to observe embanking or opening requirements of Missouri law. Plaintiff further contends the damaging waters' aggravation lay in the rush allegedly coming into the area after the dynamiting and breaking of the levees, and names Garden of Eden and Whitham drainage districts as defendants. The complaining defendants deny plaintiff's allegations, and assert the railroad embankment obstructed an overflow of waters, in no way unprecedented, especially through failure to allow egress and drainage of waters to recipient streams south of the railroad embankment by sufficient bridging of ditches, drains and water courses made mandatory by Missouri statute.

The contention of neither party is fully confirmed by the facts. The lands to the south of Yellow Creek between the Grand River, Yellow Creek and the embankment were all bottom lands, and the railroad was located on or near a natural divide between the area tributary to the Grand River and Yellow Creek and the area tributary to Salt Creek, although a part of the defendants' property was in the area tributary to Salt Creek. By June 8, 1947, excessive rainfall and the resultant rise in the river culminated in the greatest water height in that area on the records. The Grand River flow at Sumner (approximately seven miles north) on June 8, was 163,000 cubic feet per second, thirty-two times the normal bankful stage. The comparable largest river flow on record was 129,000 cubic feet on June 9, 1909. When floods occur they overflow the bank of the channels of Grand River and Yellow Creek and flood the bottoms. The flood of the Grand River caused and aggravated the flood in the area in question. The rainfall caused breaking of the government dam at Silver Lake, which contained over a billion cubic feet of water, releasing a part of it into the area which was already receiving water pouring in from Grand River and Yellow Creek. Exhibit 5, map of the water shed of the various creeks, shows that water flowed into the area from the north and northeast. The flood water rose higher on the north side of the railroad embankment than on the south side. Without the railroad embankment this area

would have been flooded, since the flood waters would have to traverse this area to reach the railroad embankment. Without the railroad embankment the run-off of flood waters would have found its way over the low areas to the south of the railroad embankment, which area was below the maximum of flood reached on both sides of the railroad, and both areas south and north of the railroad embankment would have been flooded, with the water to the south of the railroad embankment being somewhat higher and to the north of the railroad embankment somewhat lower than it was.

Of prime importance in determining liability is deciding whether the openings constructed and maintained through plaintiff's roadway satisfied statutory requirements. Section 5222, R.S.Mo.1939, Mo. R.S.A., provides in part as follows: "It shall be the duty of every corporation, company or person owning or operating any railroad or branch thereof in this state, and of any corporation, company or person constructing any railroad in this state, within three months after the completion of the same through any county in this state, to cause to be constructed and maintained suitable openings across and through the right of way and roadbed of such railroad, and suitable ditches and drains along each side of the roadbed of such railroad, to connect with ditches, drains or water courses, so as to afford sufficient outlet to drain and carry off the water, including surface water, along such railroad, whenever the draining of such water has been obstructed or rendered necessary by the construction of such railroad * * *."

The railroad was constructed in 1887. From M. P. 359 to M. P. 370 there are more than a dozen natural and artificial drainage courses crossed by the railroad. The natural drainage courses are Hickory Creek and branches of Yellow Creek (located in approximately the east third of the area involved), in which the flow of the water is from the south to the north under the tracks. The artificial water courses are for the most part the main ditches and laterals of the Whitham Drainage District, running in a southerly direction, which drains that part of the area north of the track for which Salt Creek is a natural outlet and connects with a branch of Salt Creek approximately 2.2 miles south of the track. The other openings are of minor consequence, being small pipes in the Dean Lake area, except for the large opening where the plaintiff's railroad runs above the Wabash railroad and the opening across Grand River. At least five of the openings have been constructed since the flood of 1909 and a number of the openings have been increased in size since the flood of 1909. The dispute, however, focused on whether the openings were sufficient and were all that should be present.

The evidence discloses that all natural or artificial water courses crossing the railroad embankment are bridged or piped, and the defendants through no witness showed any single drain, ditch or water course that was not properly bridged. Some of the witnesses speak vaguely of depressed surfaces where no opening exists, but the exhibits and particularly Exhibit 1, which shows in detail ground elevations, fail to substantiate such testimony.

This court has jurisdiction of this matter under Section 274d of the Federal Judicial Code, 28 U.S.C.A. § 400 [now §§ 2201, 2202], and under the decision of the Supreme Court in the case of Erie Railroad Company v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, the law of Missouri governs in this case. The railroad qualified as a dominant landholder and the defendants are servient landholders. The civil law restrains landholders, dominant or servient, from embanking, ditching or taking any course to free their lands from troublesome surface water if their efforts reacted to detriment of other property holders. Shane v. Kansas City, St. J. & C. B. R. Co., 1879, 71 Mo. 237, 36 Am.Rep. 480. Defendants use a portion of their brief to elaborate this law before qualifying its doctrine. Elaboration is unnecessary for the civil law doctrine has been specifically overruled by Abbott v. Kansas City, St. J. & C. B. R. Co., 1884, 83 Mo. 271, 286, 53 Am.Rep. 581.

Literally a dozen or more cases since have confirmed this repudiation. See, for example, White v. Wabash R. R. Co., Mo. App., 207 S.W.2d 505; Keener v. Sharp, 341 Mo. 1192, 111 S.W.2d 118; Goll v. Chicago & A. R. Co., 271 Mo. 655, 197 S.W. 244; Vollrath v. Wabash R. Co., D.C.W.D.Mo.1946, 65 F.Supp. 766.

■ The superseding doctrine or Missouri law is the original common law surface water common enemy doctrine. This doctrine authorizes any landholders, dominant or servient, to repel surface water from his estate, irrespective of resulting harm, so long as his measures are those of reasonable care and prudence in accomplishing that object. Cases immediately supra.

■ The Missouri courts have repeatedly held that waters overflowing the banks of natural water courses, namely flood waters, must be treated as surface water. Vollrath and Goll cases, supra, and literally dozens of others. Where railroad embankments are involved, there have been imposed upon the Missouri law (common law surface water common enemy doctrine), Missouri statutes, the present one being Section 5222, R.S.Mo.1939, Mo.R. S.A. This law makes it the duty of railroads to construct and maintain through their roadbeds suitable openings, as well as ditches and drains along side their roadbeds, to connect with ditches, drains or water courses to afford outlet to carry off surface water along such railroad whenever draining has been obstructed by the roadway.

The Missouri courts have uniformly held, however, that this statute does not require the construction of openings in the railroad embankment unless the opening will connect with a ditch, drain or water course. The St. Louis Court of Appeals in the case of Grimes v. St. Louis & S. W. R. Co., 184 Mo.App. 117, 168 S.W. 317, loc. cit. 318, in referring to a prior like statute, said: "* * * The statute imposes no obligation upon defendant to either construct or maintain an opening through and across its right of way for the passage of the water, unless it may be connected with a ditch, drain, or water course on the south to carry the water from plaintiff's land forward. * * * Neither may defendant open a crossing through its right of way for the water accumulated from the discharge of Cane creek in plaintiff's fields and the surface water and discharge it upon the lands of an adjacent proprietor to the south, when no ditch, drain, or water course to carry it is present, without becoming liable to respond in damages to the adjacent proprietor whose land is thus submerged. * * * From this it appears that the Legislature enjoined upon the railroad company no more than the duty of constructing and maintaining suitable openings across the right of way 'to connect with ditches, drains, or water courses so as to afford a sufficient outlet to drain and carry off the water, including surface water.'"

The Kansas City Court of Appeals in the case of Murphy v. St. Louis-San Francisco R. Co., 205 Mo.App. 682, 226 S.W. 637, loc. cit. 640, said: "Although the embankment obstructs the flow of water from rainfall on the territory drained by the aforesaid natural drain, yet the water which caused the damage to plaintiff's crops was caused by overflows from the two creeks above named and from the river. In the case of Goll v. Chicago & A. R. Co., 271 Mo. 655, 197 S.W. 244, the Supreme Court holds that the statute does not apply to a situation where waters have overflowed a stream, through no fault of the railroad, and are then held by a railroad embankment, that such overflow constitutes surface water, and that, in the situation presented in that case, such overflow or surface water is governed by the common-law rule which permitted every one to fend against it as a common enemy without liability for so doing, and that, while the Legislature might forbid a railroad obstructing the overflow of streams and require it to take care thereof afterwards, it has not, as yet, done so."

The Springfield Court of Appeals in Slinkard v. Missouri Pacific R. Co., 294 S.W. 446, loc. cit. 447, said: "The fact that there were no drains of any kind on the west immediately opposite this land

was recognized by the trial court, and the jury was instructed that defendant was not required to maintain openings to let the water through the embankment adjoining this land. The defendant, therefore, was fully protected on that question."

Judge Collet while on the District bench, in the Vollrath case, supra, in a case involving different issues from the one at bar, gave a very learned discussion of the Missouri law with respect to surface water, and said, 65 F.Supp. loc. cit. 773, in referring to the statute in question: "But this statute does not require the construction of such openings unless the openings will connect with a 'ditch, drain or water course.'"

Not a single Missouri case has been cited or found which has permitted a recovery unless there was a ditch, drain or water course with which to connect. Not a single witness has cited a ditch, drain or water course not properly connected with by openings. While it is well settled law that a ditch, drain or water course has no technical or exact meaning, and has been defined to mean a hollow or open space in the ground, natural or artificial, where water is collected or passes off, yet the most favorable competent testimony in behalf of the defendants was by their expert witness, Earl Beckner, to the effect that the area in question is a natural spillway, and he further said, "It is not a water course." As previously stated, the ground elevations in this area bear this out. For the railroad to open a number of openings through its embankment, which the defendants would have them do, would be under the Missouri law to make the railroad liable to landowners to the south, since the courts uniformly hold that surface water may not be impounded or collected by artificial means and cast in a concentrated volume on a landowner below without resulting liability. Vollrath case, supra; Funke v. St. Louis-San Francisco R. Co., 225 Mo.App. 347, 35 S.W.2d 977.

The only way the railroad could satisfy the defendants and not be liable to landowners to the south would be to lower the tracks to ground level or to put the tracks on piling for the entire distance through the flood plain in question. The Missouri courts have never held that railroads are so obligated to escape liability and the Missouri statutes do not require it.

The rains were enormous, the water rise unequalled, but the flood was not unprecedented. There was a great flood in 1909, and one in 1944. It was not an Act of God under the law, but plaintiff need not show it was. The railroad embankment complied with the statute, and that is all plaintiff need show to be entitled to judgment. Defendants are without remedy under the Missouri law on their counterclaim, and the plaintiff is entitled to a declaratory judgment.

Accordingly, the prayer of the complaint will be granted and the counterclaim of defendants and intervenors will be denied. Attorneys for the plaintiff will submit findings of fact, conclusions of law and judgment for approval, signature and entry.