W. R. PACE et al., Respondents, v. ST. LOUIS SOUTHWESTERN RAILWAY COMPANY, Appellant.

St. Louis Court of Appeals, May 6, 1913.

1. RAILROADS: Waters and Watercourses: Lateral Ditches. The duty of a railroad company, under Sec. 3150, R. S. 1909, to construct lateral ditches along its roadbed exists only when there are ditches, drains or watercourses with which such lateral ditches may connect, but it is not essential that the ditch, drain or watercourse with which they may connect be a running stream—it being sufficient if it be a lake or slough, adequate to receive, and furnishing an outlet for, the water complained of.

2. ———: ———: Failure to Construct Lateral Ditches: Damages to Crops: Sufficiency of Evidence. In an action against a railroad company for damage to growing crops, caused by its failure to construct lateral drains along its roadbed to carry off the water, as required by Sec. 3150, R. S. 1909, evidence *held* sufficient to establish that there was a ditch or drain with which the lateral ditches could have been connected, and hence it is *held* that the question of liability was for the jury.

3. WITNESSES: Husband and Wife: Competency. The husband or wife is competent to testify when he or she is a substantial party to the suit and is interested in the result, except as to confidential communications between them.

4. ———: ———: ———: Married Women: Damage to Crops: Competency of Husband. While the Married Woman's Act (Secs. 8304, 8308 and 8309, R. S. 1909 et al.) dissolved the prior unity of husband and wife and allows her to take the issues and profits of her separate estate, yet, in view of section 8308, providing that the natural products of the wife's land may be attached or levied upon to liquidate the husband's debts contracted for necessaries for the wife and family, a husband who lives with his wife on her land, cultivates it and employs the issues thereof for the livelihood of the family, has such an interest in such issues that, in an action by him and his wife for damages to growing crops, he is a competent witness.

5. RAILROADS: Waters and Watercourses: Failure to Construct Lateral Ditches: Damages to Crops: Instructions. In an action against a railroad company for damages to growing crops, caused by its failure to construct lateral ditches along its roadbed to carry off the water, as required by Sec. 3150, R. S. 1909, an instruction which did not require the jury to find that lateral ditches could have been connected with a sufficient ditch, drain or watercourse, and which did not require them to find that the draining of the water was obstructed or rendered necessary by the construction of the roadbed, was erroneous.

6. DAMAGES: Destruction of Growing Crops: Measure of Damages: Instructions. The measure of damages for the destruction of growing crops is the value of the crops destroyed, standing in the field at the time they were destroyed, and, therefore, it is error, in such an action, to permit a recovery for the market value of the crops in their matured state and after being garnered on the premises of the plaintiff.

7. ———: ———: ———: Evidence. In an action for damages for the destruction of growing crops, evidence of previous

yields upon the same or similar land, together with the cost of production and of the market price, is competent on the measure of damages.

Appeal from Stoddard Circuit Court.—*Hon. W. S. C. Walker,* Judge.

REVERSED AND REMANDED.

*S. H. West, Roy F. Britton* and *Wammack & Welborn* for appellant.

(1)  Section 3150 on which this action is based does not require a railroad company to construct or maintain openings across or ditches along the sides of its roadbed except to connect with ditches, drains or watercourses. In an action under this statute the plaintiff must show that there are ditches, drains or watercourses with which the defendant company could have connected such ditches or openings, and unless the proof shows this no case is made under this statute. Field v. Railroad, 21 Mo. App. 600; Byrne v. Railroad, 47 Mo. App. 383; Collier v. Railroad, 48 Mo. App. 402; Graves v. Railroad, 69 Mo. App. 574; Ranney v. Railroad, 137 Mo. App. 537; Grant v. Railroad, 149 Mo. App. 313.  (2)  W. R. Pace being the husband of the real party in interest was disqualified as a witness in this case. Haerle v. Kreihn, 65 Mo. 202; Paul v. Leavitt, 53 Mo. 595; Wood v. Broadley, 76 Mo. 23; Layson v. Cooper, 174 Mo. 223; Flannery v. Railroad, 44 Mo. App. 396; Brindsmade v. Groll, 14 Mo. App. 444. The land on which the crops were destroyed, being the separate property of the plaintiff, Nancy Pace, and by the provisions of section 8309 the crops grown thereon were her separate property. The fact that the plaintiff, W. R. Pace may have rendered his services in cultivating and caring for these crops gave him no interest at law in them. They remained the separate property of Nancy Pace. Rogers v.

Wolfe, 104 Mo. 1; Seay v. Hesse, 123 Mo. 450; Curd v. Brown, 148 Mo. 82; Olson v. O'Connor, 9 N. D. 504; Phillips v. Hall, 160 Pa. St. 60, 28 Atl. 502; Rush v. Vought, 55 Pa. St. 437, 93 Am. Dec. 769; 21 Cyc. 1427. (3) The proper measure of damages in this case is the value of the crops at the time they were destroyed. Hunt v. Railroad, 126 Mo. App. 261; Anderson v. Railroad, 129 Mo. App. 384; Deal v. Railroad, 144 Mo. App. 684. (4) The instructions in a case must not be broader than the pleadings. Bank v.Murdock, 62 Mo. 73; Mansur v. Botts, 80 Mo. 658; Black v. Street Railroad, 217 Mo. 685; Hufft v. Railroad, 222 Mo. 303; Dagonia v. Railroad, 224 Mo. 589.

*J. L. Fort* and *K. C. Spence* for respondent.

NORTONI, J.—This is a suit for damage to growing crops. Plaintiffs recovered and defendant prosecutes the appeal.

The suit proceeds on the grounds of negligence for the failure of defendant to observe the duty enjoined by statute upon railroad companies to construct and maintain suitable ditches and drains along each side of the railroad, to connect with ditches and drains or watercourses, so as to afford sufficient outlet to carry off water which the embankment of such railroads may obstruct.

It appears defendant's railroad passes through plaintiffs' farm in Stoddard county, which consists principally of low bottom land. The evidence tends to prove that defendant omitted to construct ditches or drains along the sides of its railroad to connect with a drain or watercourse passing under the same through a trestle, and thereby obstructed the free flow of water so as to occasion it to accumulate on a parcel of land tilled by plaintiffs. That portion of plaintiffs' farm on which the growing crops were submerged during the years 1907, 1908, 1909 lays immediately west

of and adjacent to the railroad. The water flows from the hills situate about a quarter of a mile west of the railroad, across plaintiffs' land and, prior to the building of the railroad, to the southeast therefrom. The railroad embankment, it appears, is from three to seven feet in height where it passes through plaintiffs' farm, and upon building it, defendant left two openings or trestle ways through the same. One of these trestles is mentioned in the evidence as No. 19 and the other as 19a. It is said that, though defendant left the two openings in its embankment over which the trestle work is erected, it constructed no ditches along the sides of its road to connect therewith. Therefore, the flow of water was obstructed by the railroad embankment, so as to accumulate there and submerge the growing crops.

It is urged that plaintiffs are not entitled to recover for the reason it does not appear that there was any ditch, drain or watercourse with which defendant might connect lateral ditches along the side of its roadway to afford drainage for the land. The statute requires railroad companies, owning or operating any railroad, within three months after the completion of the road, to cause to be constructed and maintained suitable openings across and through the right of way and roadbed of such railroad, and suitable ditches and drains along each side of the roadbed to connect with ditches, drains or watercourses, so as to afford sufficient outlet to drain and carry off the water, including surface water along such railroad, whenever the draining of such water has been obstructed or rendered necessary by the construction of the railroad. [See Sec. 3150, R. S. 1909.]

There can be no doubt that the statute lays the duty to construct the lateral ditches contemplated only to connect with ditches, drains, or watercourses, and if there be no such ditches, drains or watercourses with which to connect the lateral ditches, the obliga-

tion does not obtain and, therefore, may not be violated. [See Cooper v. St. Louis, M., etc., R. Co., 123 Mo. App. 141, 100 S. W. 494; Ranney v. St. Louis & S. F. R. Co., 137 Mo. App. 537, 119 S. W. 484; Collier v. Chicago & A. R. Co., 48 Mo. App. 398; Williamson v. M., K. & T. R. Co., 115 Mo. App. 72, 90 S. W. 401.] But it is not essential that the ditch, drain or watercourse into which the railroad company is required to drain and with which it is required to connect by the construction of lateral ditches or drains, shall be a running stream. It is sufficient if it be a slough or lake and is adequate to receive and furnish an outlet for the water complained of. [See Cooper v. St. Louis, M., etc., R. Co., 123 Mo. App. 141, 100 S. W. 494.]

There is no complaint in the petition with respect to the failure of defendant to construct openings in and through its embankment, and it appears those constructed were sufficient. The complaint pertains alone to the failure to construct lateral ditches to connect with alleged drains which passed through the railroad embankment at the point where defendant had constructed the trestles. It is true the evidence is rather meager as to the existence of drains at these points. There is much in the case to suggest that the trestles were constructed at low places in the bottom which could not be regarded as either ditches, drains or watercourses. This material point in the case was poorly developed in the evidence, but enough appears to render the question one for the jury. It is true some of the witnesses spoke of these places where the trestles were built as "draws" or as "swags," but others dignified at least one of them as a slough and a watercourse. One witness said Tupelo slough commences right under the trestle and runs from there to No. 4 drainage ditch, which was constructed and is owned by Stoddard county. If this is true, it is obvious that this slough would afford "sufficient outlet to drain and carry off the water" turned into it by the lateral

ditches, for the case conceded that drainage ditch No. 4 which the slough intercepts is ample. Another witness said of this slough that it is a regular watercourse running southwest from the railroad, cutting a low "swag" in the bottom. In speaking of this slough, defendant's witness, a civil engineer, says that there seems to be "a depression of about one foot under that trestle there." There are a number of other statements by the witnesses throughout the record that suggests Tupelo slough to be a natural watercourse running under the trestle and connecting with drainage ditch No. 4. It is true this slough was shallow at the point in question and no doubt dry a good portion of the year, but be this as it may, it appears to be a drain provided in the economy of nature to carry off the surplus waters and so situate under defendant's railroad as to receive the outlet from drains or lateral ditches which could have been connected therewith. It is clear the case is one for the jury.

It appears the land on which the growing crops were destroyed by the accumulation of water thereon was owned by Nancy C. Pace, the wife and coplaintiff of W. R. Pace. Both husband and wife are parties plaintiff. Mrs. Pace was not introduced as a witness, but her husband, W. R. Pace, gave testimony in aid of their suit. It was objected that he was incompetent to testify on account of the relation of husband and wife and because he was but a nominal party and his wife sole party in interest. While it appears Mrs. Pace owned the land, it appears she and her husband occupied it together and that he put out and tended the crops as is usual in such cases. It is urged that the court erred in permitting the husband to testify under these circumstances and the theory advanced is that the crops on Mrs. Pace's land, though planted and cultivated by her husband alone for the use of both, are her sole and separate property, for the destruction of which she alone may recover. There can

be no doubt that the husband or wife is competent to testify when he or she is a substantial party to the suit and interested in its result, except as to confidential communications between them. [See Fugate v. Pierce, 49 Mo. 441; Harriman v. Stowe, 57 Mo. 93; Scrutchfield v. Sauter, 119 Mo. 615, 24 S. W. 137.] But it is said the husband is without substantial interest in the suit to recover for loss of crops on the wife's land put out and grown by him, even though the twain occupied the premises together in harmony as husband and wife and in virtue of the family relation. It is true that our Married Woman's Act dissolves the prior unity of husband and wife as to the property rights enumerated therein, and by those statutes the rents, issues and products of the wife's separate real estate belong to her. [Secs. 8308, 8304, 8309, R. S. 1909; Curd v. Brown, 148 Mo. 82, 49 S. W. 990; Brown v. Brown, 124 Mo. 79, 27 S. W. 552.] But even the Married Woman's Statute (Sec. 8308) recognizes and continues a substantial interest in the husband touching the annual products of the wife's land, in that by the proviso it renders them liable for the debts of the husband created for necessaries for the wife and family which the law casts the obligation on him to supply. Moreover it is determined that, where it appears the husband and wife live in harmony together occupying the wife's land and the husband tills it and employs the products in the usual way for the benefit of all, the law will not imply a contract between them whereby the husband should pay rent to the wife. [See Donovan, etc., v. Griffith, 215 Mo. 149, 114 S. W. 621.] Obviously this view suggests that the husband has a substantial interest in annual products of the wife's land when it appears the husband and wife reside thereon together and he tills the ground as a means of livelihood for himself and his wife and family. Therefore, we believe it is a just view, in those cases where the husband and wife reside together in

harmony on the wife's land, and he, in performance of his marital obligation to support and maintain the family, contributes of his labor and means in producing crops on her land, that he should be regarded as having a substantial interest in such crops, so as to enable him to testify, in a suit to which he is a party, for their destruction or loss through the tort of another. Especially is this true in view of the proviso to section 8308 continuing in the husband an interest which may be utilized to liquidate his debts contracted for necessaries for the wife and family.

For plaintiffs the court instructed the jury as follows:

"The court instructs the jury that if they shall believe and find from the evidence that plaintiffs' lands, described in the petition, were overflowed by high waters, in the years 1907, 1908, and 1909, and that said overflows were caused by the acts of the defendant in failing to construct or maintain ditches on the sides of its railroad where said railroad runs through said land sufficient to carry the water off of said land and that said overflows destroyed the crops planted and growing on about eight acres of said land in the year 1907 and about eight acres of said land in the year 1908, and about eight acres of said land in the year 1909 and that said crops were planted on said lands by the plaintiff in said years, *and that during the time said crops would have been maturing in said years, plaintiff was able and willing, and would have performed all the work and labor necessary to finish the cultivation of said crops, and that plaintiff, during all of said years, was able and willing, and would have performed all the work and labor necessary to put away, house, or garner, said crops, on the farm or place where they were planted; and that during the time, in said years, in which plaintiffs would have been engaged in finishing the cultivation, harvesting and garnering said crops, he was not able to find, and*

*could not find, other employment which would yield him any thing of value,* then your verdict should be for the plaintiff and you should assess his damages at a sum equal to the fair market value, during said years of said crops *in their matured state, and house or garner, on the premises of the plaintiffs.*"

Error inheres throughout this instruction. The instruction permits a recovery upon a finding of the mere fact that plaintiffs' lands were overflowed and that the overflows were caused by the act of defendant in failing to construct and maintain ditches on the sides of the railroad where it runs through plaintiffs' land sufficient to carry the water off the land, without requiring the jury to find that the railroad embankment obstructed the flow of the water and without requiring a finding that there was a sufficient drain, ditch or watercourse to which lateral ditches could be connected for the purposes contemplated by the statute. The statute authorizes a recovery as for a failure to observe its obligation, only when the railroad company fails to construct or maintain lateral ditches "to connect with ditches, drains or watercourses" which may afford an outlet to drain and carry off the water. Therefore, the jury must be required to find that such ditches, drains or watercourses are present with which a connection by lateral ditches may be made, for without them no obligation is imposed to construct or maintain such lateral ditches. [Ranney v. St. Louis & S. F. R. Co., 137 Mo. App. 537, 119 S. W. 484.] In the instant case it is not abundantly clear that there was a sufficient ditch, drain or watercourse with which the lateral ditches could be connected and the question is highly material on the evidence. However, there is substantial evidence tending to prove this fact, but the jury should be required by the instruction to find it to be true. The instruction omits, too, to require a finding that the draining of the water had been obstructed or rendered necessary by the construction of

the railroad, while the statute under consideration imposes one of these as an essential element of the right to redress.

Furthermore the instruction is erroneous in respect of the measure of damages it prescribes. That portion of the instruction italicized would permit a recovery quite beyond any rule of damage with which we are familiar. It is unnecessary to comment upon it further than to say that the error it reveals is manifest. The true measure of damages in the case here for the loss of growing crops is the value of the crops destroyed standing in the field at the time they were destroyed. The rule is well settled. [See Hunt v. St. Louis, I. M., etc., R. Co., 126 Mo. App. 261, 103 S. W. 133; Anderson v. St. Louis, I. M., etc., R. Co., 129 Mo. App. 384, 108 S. W. 605; Deal v. St. Louis, I. M., etc., R. Co., 144 Mo. App. 684, 129 S. W. 50.] However, in determining the value of a growing crop, which is always a difficult matter, it is competent, in an action for damages for its destruction, to give evidence of the yield of a similar crop on similar land under similar conditions and the market value of the crop in the autumn when matured in connection with evidence of the cost of planting, cultivating, gathering and marketing the same. From such data it is said the jury is enabled to ascertain, with reasonable certainty, the amount of the loss at the time it was suffered while the crop was yet growing in the field. [See Hunt v. St. Louis, I. M., etc., R. Co., 126 Mo. App. 261, 103 S. W. 133.]

Because of the errors pointed out in plaintiffs' instruction, the judgment should be reversed and the cause remanded. It is so ordered. *Reynolds, P. J.,* and *Allen, J.,* concur.