F. W. SMITHPETER; LEWIS HARDIN; AGNES WHITLEY MUSE; A. H. BYNUM; HUGH KELLY; BERTIE PELTIER, ANNA HOLLISTER, RALPH GORMAN, ED GORMAN, EDITH LEWIS, and JENNIE E. GORMAN, Heirs of the Estate of CHARLES E. GORMAN, Deceased; KATHRYN SHAFER; ED TRENNEPOHL; ARCH STATON; F. C. TOMLIN; CARL DICK and HAROLD TAYLOR; GOLDIE BYNUM; DALE WILLIAMS and DON WILLIAMS; W. T. GRIFFITH; MONROE LIGHTFOOT; JESS DICKSON; JOHN GRUSH, HENRY GRUSH, EDWARD GRUSH, ALICE SCHROTBERGER, DANIEL GRUSH, ALBERT GRUSH, BERTHA SCHROEDER, FRANK GRUSH, THELMA Z. VERDUN, HAZEL JORGENSEN, HAROLD GRUSH, IZETTA GRUSH KOENTGE, and ALICE SWEET, Heirs of ROBERT J. HANNE and NETTIE E. HANNE, Deceased, Respondents, v. WABASH RAILROAD COMPANY, a Corporation, Appellant, No. 41022—231 S. W. (2d) 135.

Court en Banc, June 13, 1950.

Rehearing Denied, July 10, 1950.

*J. H. Miller, Graham & Stipp, Sam B. Sebree* and *Sebree, Shook, Hardy & Hunter* for appellant.

*Joe H. Miller, D. D. Thomas, Jr.,* and *George H. Miller* for respondents.

840

CONKLING, J.—In their consolidated action in twenty-five counts for damages for alleged destruction or damage to their crops by flood.waters, in alleged violation by the railroad of Sec. 5222, both Mo. R. S., 1939, and Mo. R. S. A., plaintiffs-respondents recovered a judgment aggregating $20,585.40. The defendant Wabash Railroad Company appealed.

The appeal was first heard in Division Two of this court. That division, in an opinion prepared by Commissioner Westhues, affirmed the circuit court's judgment. The railroad's motion for re-hearing was overruled, but its motion to transfer the cause to the court en banc was sustained. The appeal was thereafter heard before the court en banc, and the opinion of Division 2 was adopted as the opinion of the court en banc. The Wabash again filed a motion for rehearing. That motion was sustained and the appeal was again heard upon reargument before the entire court. The cause was thereupon re-assigned for the preparation of a new opinion. Without quotation marks portions of the divisional opinion are herein used. For reasons hereinafter stated we again affirm the circuit court's judgment.

Plaintiffs are landowners and tenants of land situated in Drainage District No. 3 of Carroll County, Missouri. The Wabash roadbed involved here runs in a general easterly and westerly direction through that drainage district and across Carroll County. Just east of the town of Wakenda, the railroad roadbed for some miles is constructed upon an earthen embankment. The lands in question here are in the flood plain of the Missouri River (flowing about a mile south of the railroad) and also in the flood plain of Wakenda Creek. The natural land drainage is toward the southeast. Wakenda Creek (a large, natural, flowing watercourse) enters Carroll County on the west county line (from Ray County) and runs in a general southeasterly direction for some miles. North of the town of Wakenda that creek is substantially parallel to and about a mile north of the Wabash tracks. About three miles northeast of the town of Wakenda, Wakenda Creek turns south and flows under the railroad tracks under Wabash

bridge numbered 516, and thence flows on south and east into the Missouri River, a mile or so away. The maps filed as exhibits, show that between a point due north of Wakenda, Missouri, and Bridge 516, a number of sloughs and farmers lateral ditches, all draining nearby land, empty into the Wakenda watercourse. Bridge 516 is the only opening under the railroad tracks through which the natural drainage, including surface water, which naturally follows down the Wakenda watercourse could reach the south side of the railroad embankment, and eventually reach the Missouri River. All of the land involved is drained by the Wakenda. In all, Wakenda Creek drains an area of 245,350 acres. The county engineer testified that the necessary areaway for the passage of water from that watershed under the tracks at Bridge 516 is 4270 square feet. According to defendant's evidence the opening under Bridge 516 was 2316 square feet. Plaintiff's proof was that this opening was about 2,000 square feet. Plaintiff's evidence showed that if there had been no levees an opening of at least 4,000 square feet under Bridge 516 was required to take care of the waters in the Wakenda which could reasonably be expected to come down that watercourse in periods of heavy rainfall.

The Wabash Railroad was originally constructed across Carroll County about the year 1885; the track was built on an embankment across the bottom land here involved, and a bridge was built over Wakenda Creek. In the year 1903, a new bridge, the present structure (Bridge 516) was built. It is the opening under this 1903 bridge, of which complaint is here made. The bridge which existed there before 1903 had long trestles on either side of the main span. The bridge engineer of defendant testified that the 1903 bridge has two per cent less area under it for the passage of water than did the prior structure. The former bridge was longer than the present Bridge 516. When the new bridge was built in 1903 the trestle work at each end of the old bridge was filled in to make solid embankment. Thereafter floods occurred.

The petition alleged that "this opening under Bridge No. 516 was the only opening made by the defendant for the escape of natural drainage and surface flood waters following said natural watercourse (Wakenda Creek) * * * into the natural channel and flood watercourse below said bridge", etc. It is further therein alleged, "that the opening underneath said bridge was made too small and wholly inadequate to carry the natural drainage and surface flood waters that could reasonably be expected ▮▮▮ to follow said natural watercourse"; and that, "defendant has violated and failed to comply with Sec. 5222 (Mo. R. S., 1939, Mo. R. S. A.) * * * in failing to construct and maintain suitable openings across its roadbed and right-of-way (under its track) as a sufficient outlet to allow the passage of natural drainage and surface flood waters of said natural watercourse", etc. Plaintiffs' petition also alleged that the opening under

Bridge 516 being too small, caused flood waters to back up on plaintiffs' lands and damage or destroy their crops in 1942 and 1945, because the flood waters of the Wakenda were held back by the embankment and the girders of Bridge 516, thus causing the levees to break upstream from the bridge and the flood waters to flood their lands and damage their crops.

At the times in question here Wakenda Creek, just above Bridge 516, was 100 feet wide from bank to bank; Bridge 516 was 160 feet wide and the bottom of its lower girders were about 6 feet above the top of the Wakenda Creek banks; extending some miles north and west upstream, one on the east side of Wakenda Creek and one on the west side, and 400 feet apart, were drainage district levees (placed there after the Drainage District was organized in 1906) the tops of which levees were about six feet above the banks of Wakenda Creek; these levees tied into the north side of the railroad embankment about 18 inches below the rails of the railroad track. Just downstream from Bridge 516 there was also a levee on the west side of Wakenda Creek, but there was none on the east side of the creek. In these periods of heavy rainfall (in 1942 and 1945) Wakenda Creek was overflowing and the waters were up against the sides of the levees. At Bridge 516 the water was so high it was flowing against the bottom girders on both the upstream side and the downstream side of the bridge. The water was 18 to 24 inches higher on the bridge girder on the upstream side of Bridge 516 than it was on the downstream side. Below the bridge the creek bed proper was 100 feet wide. There was testimony that in each flood year at the time of the flood the water below the bridge was within 18 inches of the top of the west levee, and was flowing over the lands which lay east of Wakenda Creek. There was also testimony, however, that below Bridge 516, at the time of these floods, Wakenda Creek was not even bank full, and was not overflowing the land lying east of the Creek. Those conflicts in the evidence, the jury resolved in favor of plaintiffs. During one of these floods here in question, Wabash employees on the bridge used poles to force under the bridge the driftwood which had collected against the upstream girder of Bridge 516. A number of plaintiffs testified that in each of these two flood years, when the water reached and flowed against the girders under the bridge, the water in the Wakenda watercourse backed up, the levees broke a half mile to a mile upstream and the waters flooded out their crops. There was a strong current in the Wakenda under the bridge each time the levees broke.

One plaintiff, Dale Williams, testified that, ''when the creek started to raise, we began patrolling the levees. We would walk up and down the levee to see if we could observe any leaks * * * seepage or anything * * * we could hold the levees providing it (the water) never touched the beams on the railroad (Bridge 516). That was always our fear but when it got against those beams it was a matter

of a few hours until it overflowed the top of the levees. * * * The more water that piled against those girders, the more it pushed back upstream. * * * It (the water) raised fast when it started hitting that bridge * * * you could tell a difference in the raise of water. It came on us and piled fast.'' There was abundant evidence that during these flood periods (June, 1942 and May, 1945) the water in the Wakenda watercourse piled up against the upstream side of Bridge 516, and that it could not get through under that bridge because the opening thereunder was too small and was not suitable to afford a sufficient outlet; that the water was much higher against the upstream girder than it was below the bridge measured against the downstream girder; that the water did not break over or through the levee until was flowing through and using all the usable space below the bridge; that the beam or girder of the bridge held the water north of the bridge, raised the level of the water between the levees back upstream causing the water to overflow the levees, and causing the levees to break and let the water through to the damage of plaintiffs' crops.

Defendant's bridge engineer, C. J. Johnson, was asked, ''Do you mean to tell the members of the jury that this bridge down there at 516 is large enough now? A. It's not large enough now with all the water restricted between the levees.'' Mr. Johnson further testified: ''Q. Now, at this bridge 516, if you, as an engineer for the Wabash Railroad Company, were going to build a new bridge there and there wasn't one there at all, what would you take into consideration? A. I would build a bigger bridge than there is now, than the present one, yes, sir.'' Other facts will appear in the course of the opinion.

Defendant's brief presents many contentions and cites a multitude of cases, statutes and texts. All have been carefully examined and considered. Defendant complains that our prior opinion in this case did not discuss the purported authorities cited in defendant's brief, but space forbids a discussion of each purported authority.

██ As a basis for some of its contentions, defendant assumes in its brief, that, ''The water *in the Wakenda* was not obstructed. The only water obstructed was surface water artificially brought to this one opening, Bridge 516, by the construction of the levees. It was the levees, not the lack of opening through the embankment, which caused the obstruction. * * * The water that was obstructed was not flowing 'in the Wakenda' ''. (Italics ours) We first consider the soundness of that assumption.

For years unnumbered, antedating the railroads and antedating the memory of the oldest settler, Wakenda Creek was (and now is) a large, natural watercourse flowing southeastwardly through the Carroll County bottoms and draining a large area. Many who long ago spent their boyhood years in that county learned to swim in the muddy waters of Wakenda Creek, as did their fathers and grandfathers be-

844

fore them. The origins of that creek are steeped in tradition, and its history is preserved in Missouri literature and poetry. It has long been a large, natural, and flowing watercourse. The organization of Drainage District No. 3 and the construction of the levees along each bank of the lower Wakenda above the railroad did not convert that natural watercourse into something other than a natural watercourse, nor did the levees free this stream and the water moving anywhere between the two levees from the operation of this statute. All of the water anywhere between the two levees was water in a watercourse.

The statute, Sec. 5222, made it the defendant's duty "to cause to be constructed and maintained suitable openings across and through the right of way and roadbed of such railroad * * * to connect with ditches, drains or watercourses, so as to afford sufficient outlet to drain and carry off the water, including surface water, along such railroad whenever the draining of such water has been obstructed or rendered necessary by the construction of such railroad," etc. The defendant was under the statutory duty to maintain *suitable* openings through its right of way (to connect with the Wakenda watercourse south of its track) *to afford sufficient outlet for the water, including surface water,* because the draining and escape of that water is naturally obstructed by the railroad embankment unless the railroad permits it to pass through to the south side. No railroad may dam up a flowing watercourse. No railroad may back up the water flowing in a natural watercourse. The opening under its bridge must be sufficient to permit all water coming down the watercourse to flow through the railroad embankment, even in flood times. Jones v. Chicago, B. & Q. R. R. Co., 343 Mo. 1104, 125 S. W. (2d) 5, Goll v. Chicago & A. Railroad Co., 271 Mo. 655, 197 S. W. 244, Brown v. St. Louis & S. F. R. Co., 212 Mo. App. 541, 248 S. W. 12. Under this statute a railroad must have an opening through its embankment sufficient to let through the water, including surface water, which reaches its embankment. When the water reaches the railroad embankment it must either be permitted by the railroad to get through the embankment or it will (as it did in this case) flood the land above. Whether within the deepened natural banks of Wakenda Creek or whether also outside those banks and within the two levees the water moving down the Wakenda watercourse was water, including surface water, which the railroad was under the statutory duty to let through its embankment before it backed up, overflowed the levees, flooded plaintiffs' land and damaged their crops.

Even if it were true, as defendant argues, (which it is not) that all water which reached Bridge 516 in the Wakenda watercourse (exclusive of that water which flowed within the bare natural banks of the creek bed itself) should be technically denominated as surface water, even that could not relieve defendant of its duty under the statute. The statute in express terms requires the railroad "to afford

sufficient outlet for the water, including surface water." Conceding the Missouri common law rule as stated in Keener v. Sharp, 341 Mo. 1192, 111 S. W. (2d) 118, Vollrath v. Wabash, 65 Fed. Supp. 766, and other cited cases, "that surface water is a common enemy which every man may ward off his land and thus throw on an adjacent owner, provided he does not, in warding it off, unnecessarily collect it and discharge it to the damage of his neighbor," the statute made it mandatory upon defendant to let that water (surface water) as well as other water through its embankment. Even under defendant's theory as to the water above and outside the bare natural creek banks (and within the levees) being surface water, the statute also requires defendant to let that surface water through the embankment.

There is no rational basis whatever under these facts to distinguish these commingled flood waters coming down this natural watercourse of the Wakenda, and make fish of one drop of water and fowl of another drop of water. For more than thirty years defendant knew that these levees had stood just outside the creek banks leading down to Bridge 516, and that those levees tied into the north side of its embankment. It all constituted and was one entire flowing watercourse conducting millions of gallons of water annually out of a drainage area of nearly 250,000 acres under Bridge 516, and on into the Missouri River. Jones v. Chicago, B. & Q. R. Co., supra, Tackett v. Linnenbrink, (Mo. App.) 112 S. W. (2d) 160, 164. The construction of the levees on each side of the creek banks merely increased the size and water carrying capacity of the Wakenda watercourse. Defendant cannot avoid its plain statutory duty "to afford sufficient outlet for the water, including surface water" by contending that "the water that was obstructed was not flowing in the Wakenda." We rule that it was. Only by closing our eyes to the record facts and by closing our minds to the realism of the conclusions these facts so logically compel, could we reach a contrary view. Defendant's above stated assumption is unsound and unwarranted in law.

█ . We next consider defendant's basic contention as to its construction of Sec. 5222, as presented in point 2 of its brief. Defendant argues that as plaintiffs failed to prove that "there were ditches, drains or watercourses south of the railroad embankment *sufficient to carry off the water*, including surface water, coming through defendant's embankment," that plaintiffs made no case for the jury. Defendant's brief states its position in these words: "* * * the duty of the railroad under Sec. 5222 is limited to passing only that water through the embankment which can be carried off by a ditch, drain or watercourse below."

We do not agree that a railroad's duty is so limited under that statute. Analysis of the statute discloses nothing therein which limits the railroad's duty to passing through its embankment only such water as can be carried off below. In Sec. 5222, we find neither words nor

context which warrants any such construction. The statutory duty is that the railroad must construct and maintain "suitable openings" through its embankment, to connect with watercourses, "so as to afford sufficient *outlet*" (through its embankment) i. e., to permit all water (including flood water) to get through its embankment to the lower side, "whenever the draining of such water has been obstructed or rendered necessary by the construction of such railroad." Jones v. Chicago, B. & Q. R. Co., supra. There is not one word in the statute limiting the water the railroad must let through its embankment to such water as can be carried off within the banks of the drain, ditch or watercourse below the railroad. Nor is there anything in the statute intimating the railroad's duty is discharged if the water above the embankment and required to be let through cannot be carried off within the banks of the existing "ditch, drain or watercourse." The statute does not require the watercourse below the bridge be "sufficient" to carry away water drained through the embankment.

It is required that there be a ditch, drain or watercourse into which the opening in the embankment allows the water to flow. The word "sufficient", as used in the statute, refers only to the opening through the embankment. It has no reference whatever to the capacity of the ditch, drain or watercourse below the embankment. The statute is susceptible of only one construction in this respect. In cases brought under this statute the courts have repeatedly held there is no duty on the railroad to let water through its embankment *unless* there exists there a connecting ditch, drain or watercourse below the embankment into which such water may flow. Grimes v. St. Louis & S. W. Ry. Co., 184 Mo. App. 117, 168 S. W. 317, 318, Harris v. St. Louis-San Francisco R. Co., 224 Mo. App. 445, 27 S. W. (2d) 1072, and many cases annotated in Vol. 14, Mo. R. S. A: pages 580, 581. But a railroad must maintain "suitable openings across and through the right of way * * * so as to afford a sufficient outlet", *when* there is a connecting ditch, drain or watercourse which extends from the downstream side of its embankment. It is conceded in this case that the Wakenda watercourse flowed through the embankment, connected and extended from the downstream side of the embankment at Bridge 516 and flowed on into the Missouri River. But there is no statutory requirement as to the *sufficiency*, or the *size*, or the *water carrying capacity* of the connecting ditch, drain or watercourse extending below the embankment.

Defendant under this point 2 of its brief cites eleven cases. We notice them. The cases cited from this court are Keener v. Sharp, supra and Goll v. C. & A. Ry. Co., supra. Neither of those cases is authority for the proposition for which they are cited under defendant's point 2. The Keener case involved neither a railroad nor the instant statute. The trial court there enjoined the maintenance of a water gate between a bayou and a lake. We there defined a water-

course. The Goll case merely announced the Missouri common law rule as to surface water. The Byrne, Graves, DeLapp, Grimes, Field and Kenney cases, decided by Missouri Courts of Appeals and cited by defendant under its point 2, do not touch the proposition for which they purportedly are cited. We find two Court of Appeals cases do mention the point. Those cases are Cooper v. St. L., M. & S. E. R. Co., 123 Mo. App. 141, 100 S. W. 494 and Pace v. St. L. S. W. R. Co., 174 Mo. App. 227, 156 S. W. 746. Of these last two, only the Pace case is cited in defendant's brief.

So far as our research has disclosed the first opinion in Missouri to mention the adequacy or sufficiency of the ditch, drain or watercourse below the railroad embankment to receive or carry away the water required by the statute to be let through the embankment is the Cooper case, supra, decided in 1907. As we read that case it seems that the Court of Appeals in construing this statute, as it then existed, read into the statute the requirement that the ditch, drain or watercourse connecting below the embankment must be, "amply sufficient to ·have carried off the water", and that, if it is not ▮▮▮ "amply sufficient" to do so, there is no duty on the railroad to let the water through its embankment. The same Court of Appeals in the Pace case, supra, in 1913, seems to have erroneously adopted the conclusion of the Cooper case, supra. What was said in those cases in that respect is not the law and should not be followed. Other than in the Cooper and Pace cases, we are unable to find that this question of the adequacy or sufficiency of the ditch or watercourse, below the embankment to receive and carry away the water coming through the embankment, has ever been considered or mentioned by any Missouri court in any case.

Defendant relies on Vollrath v. Wabash R. Co., wherein a United States District Court for Missouri, in discussing the statute now being considered seems to have followed the Pace case, supra, upon this matter of the sufficiency or adequacy of the ditch, drain or watercourse below "to receive and furnish an outlet for the water complained of." But if that court in the Vollrath case intended to construe this Missouri statute (Sec. 5222) to mean that the duty of a railroad thereunder is limited to passing through its embankment only that water which the ditch, drain or watercourse below the embankment was adequate to receive (without overflow or flood) and carry away, i. e., that the lower ditch, drain or watercourse must be adequate to receive and carry away, without overflowing, such waters as came through the embankment, then that portion of the Vollrath case will not be followed in this court. It is our duty to construe Missouri statutes and declare the law of this state. Missouri statutes must be taken as construed by this Court, not as construed by any Federal Court.

Defendant also cites upon this point 2 of its brief the case of Atchison, Topeka & Santa Fe Ry. Co. v. Taylor, 87 Fed. Supp. 313,

decided by another Federal District Court for Missouri. But we do not find this question discussed in that case at all. This unambiguous statute does not permit of the construction for which defendant here contends. Such a construction is not reasonable. To judicially declare that a railroad is required under this statute to pass through its embankment only such water as will not overflow the ditch, drain or watercourse running from the downstream side of its embankment, in effect, is to declare that a railroad may itself determine the extent of its duty under this statute. That would nullify the statute. Nor can the law be written that a railroad must be able to correctly guage, under any and all conditions and at all places, or under any circumstances, the adequacy, sufficiency or water carrying capacity of a lower ditch, drain or watercourse, and thus at its peril let only so much (and no more) water through its embankment. Such a construction would place upon the railroad an even greater burden than the instant statute, and, likewise, would circumvent the plain purpose of the statute's enactment. The legislative intent was that, under the circumstances stated in the statute, a railroad embankment shall not serve as an artificial dam to back up water upon a dominant owner to the damage of the latter. The law places upon a railroad no duty (and grants a railroad no permission) to enter upon any servient land to construct or to enlarge any existing ditch, drain or watercourse to increase its water carrying capacity. We think the meaning of the statute is clear. The above stated contention of defendant must be denied.

■ Defendant contends plaintiffs failed "to establish that there was any insufficiency of the opening under defendant's Bridge 516", and that the evidence does not show any such alleged insufficiency was the proximate cause of plaintiffs' damage. To us that contention seems fully answered by the facts hereinabove stated, and that a restatement of those facts would belabor the obvious.

This record is replete with testimony that during the flood periods in issue here the water in the Wakenda watercourse was flowing against, and piled up against, the girders of Bridge 516; that the water level against the upstream side of the bridge was much higher than at the downstream side of Bridge 516; that the water flowing under the bridge was using all of the space under the bridge; that the water held back ■ by the bridge could not get through under the bridge because the opening thereunder was too small and was not suitable to afford a sufficient outlet for the water; that the water in the Wakenda watercourse did not flow over or break the levees (or flood plaintiffs' crops) until after it began to flow against and be backed up by the bridge; and that the water flowing against the bridge raised the level of the water between the levees back upstream, causing the levees to break and damage plaintiffs' crops. Those facts were abundantly established. Proximate cause is shown by those

facts. It is for us to determine as a matter of law whether this record presents substantial evidence or allowable inferences sufficient to have warranted the submission of the case to the jury. And we rule that there was substantial evidence to make a jury case. Under the evidence before us here, it was the jury's province to determine the weight and value of the evidence. Jones v. Chicago, B. & Q. R. Co., supra. The scope of appellate review precludes consideration of the weight of the evidence, or of evidence favorable to defendant. We must state and consider the evidence in the light most favorable to plaintiffs.

Defendant relies strongly upon Evans v. Massman Construction Co., 343 Mo. 632, 122 S. W. (2d) 924, wherein the instant statute was not involved. In that case (sounding in negligence) it was claimed that a dike constructed in the Missouri River by the Construction Company raised the water level in the river at a point three miles upstream from the dike thereby causing a break in a levee to let in water and flood plaintiffs' land. There the judgment of the plaintiff was based solely upon speculation and conjecture. That case is not an authority under the circumstances in this case. Defendant's contention must be denied. We rule that in this case defendant's motions for directed verdict were properly overruled.

Defendant assigns as points 3, 4 and 5 of its Points and Authorities and devotes nearly twenty pages of its printed argument to the proposition that the instant statute "is not applicable where a railroad bridge spans a creek under the control of a drainage district organized under the county court drainage law", because "the judgment of the county court approving the plan of drainage and determining benefits and damages is res judicata." Defendant's reasoning upon this contention is not entirely clear but its argument seems to be (we quote defendant's brief), "Our contention here is that when the Wakenda became a drainage ditch and the county court assumed exclusive control over it, then the provisions of the drainage district statutes became applicable and the provisions of Section 5222 no longer applied. The duty to see that the opening at Bridge 516 was sufficient was, from that time forward, on the county court."

In paragraphs 4 and 5 of defendant's amended answer the just above stated matters were pleaded as res adjudicata and in bar. Upon plaintiffs' written motion the trial court struck paragraphs 4 and 5 from the amended answer. The trial court permitted proof, however, that the petition to form drainage district number 3 was filed May 12, 1906; that the county court's final order organizing the district was entered December 29, 1910; and that a portion of the notice to contractors, in the record of the county court respecting drainage district number 3 was as follows: "Section 1025, Wabash Railroad bridge, 160 feet open deck through Pratt truss. Canal line follows present creek channel under bridge."

Under the record on this appeal, defendant's above stated contentions are not before us. In any event, there is no merit in them. The use of the Wakenda watercourse by the drainage district and the building of the levees by the district did not change the nature of the Wakenda watercourse, nor relieve defendant of its statutory duty. Neither the title to that portion of defendant's right-of-way under Bridge 516, the title to and control of Bridge 516, nor the control of the amount of areaway under Bridge 516 passed out of defendant by virtue of the organization of the drainage district. The statutes giving the county ▇▇▇▇ court exclusive management of the district, placing on that court the duty to maintain the efficiency of the district, and authorizing the county court to initiate any construction or enlargement of any bridge did not relieve defendant railroad from the duties placed on it by Sec. 5222. Nothing within Article 3, of Chapter 79, R. S. Mo. 1939, operated to take away from defendant any control or duty respecting its right of way or bridges, nor did any provision therein operate to lessen defendant's duty to permit water in a flowing watercourse to pass through its railroad embankment.

The organization of the drainage district (1906 to 1910) cannot free the defendant from the consequences of a failure to obey the mandates of Sec. 5222. The duty of defendant under that statute existed when Bridge 516 was built in 1903, it existed in 1911 after the drainage district was organized and the levees built, and it existed in 1942 and 1945 at the time the damages sued for were sustained. The defendant cannot hide behind the drainage statutes nor the existence of the drainage district to escape a duty affirmatively placed upon it by Sec. 5222. Pearson Elevator Company v. Missouri-Kansas-Texas Ry. Co., 336 Mo. 583, 80 S. W. (2d) 137, Boggs v. Missouri-Kansas-Texas R. Co., 336 Mo. 528, 80 S. W. (2d) 141. This contention of defendant is without merit or substance and the trial court did not err in striking out paragraphs 4 and 5 of the amended answer.

▇▇ Of instruction 1. Defendant next contends the trial court erred in giving plaintiffs' instrument 1 to the jury. This contention is based upon the argument that the instant statute "does not in any place refer to a bridge over a stream", and that whether the railroad "has performed its duty is not dependent on one bridge." Defendant argues that at places other than Bridge 516, along this embankment east of Wakenda, Missouri (one was two miles west and one was a mile east of Bridge 516) there were other openings through its embankment. Those openings, however, did not relieve the situation at Bridge 516, over this flowing watercourse, nor did they diminish defendant's statutory duty.

It is no defense to this action that the statute "does not in any place refer to a bridge over a stream." The language of the statute

very clearly is broad enough to include a bridge over a watercourse or a stream, and Missouri courts have held time without number that this statute does determine a railroad's duty at and under a bridge over a stream. It is also argued that instruction 1 is reversibly erroneous because, in stating defendant's duty under the statute the instruction did not "base that duty on the sufficiency of openings (below the embankment) to carry off water obstructed", etc. What we have said hereinabove disposes of that objection. It is also argued that the instruction is erroneous because it fails to require a jury finding that "there must exist ditches, drains or watercourses with which the openings (through the railroad embankment) can connect." The fact that the Wakenda watercourse did exist and did extend from the downstream side of defendant's Bridge 516 on to the Missouri River was testified to by most all of the witnesses for both plaintiffs and defendant. We do not find that such fact was denied anywhere or by any witness. Nor could it be denied. Many exhibits establish it. The Wakenda was a *flowing watercourse*. The case was tried below upon that theory. We find that that fact is many times conceded in defendant's brief.

Under these circumstances there is no merit in this contention. In any event we are prohibited by statute to reverse the judgment unless we believe that the above noted omission of instruction 1 was error, "materially affecting the merits of the action." Mo. R. S. A., Sec. 847.123, and Sec. 147.140 (b). We do not believe that omission did affect the merits of this case. Where, as here, there was no issue in the evidence respecting it, where the case was tried upon that theory and where defendant's brief so unequivocally and so many times concedes that fact, that such finding was omitted from the instruction could not possibly materially affect the merits of this case. The contention must be denied. Fenton v. Thompson, 352 Mo. 199, 176 S. W. (2d) ▮▮ 456, Cornwell v. Highway Motor Freight Line, 348 Mo. 19, 152 S. W. (2d) 10.

It is also contended the instruction required no finding that "the drainage of the waters was obstructed or made necessary by the construction of the railroad." We cannot sustain this contention. The instruction requires the jury to find that defendant failed to construct Bridge 516, "with sufficient capacity to permit the natural drainage and overflow waters, if any, which said defendant * * * should reasonably have expected would occur, considering the size of said stream, its carrying capacity, the number of acres drained by said watercourse, and the character of the country drained by it, to pass under said bridge and through its roadbed and embankment," etc. Perhaps the instruction is not worded as defendant's counsel would have written it and while it does not follow the exact wording of the statute in the respect noted, it is not subject to the objection here

852

made. The approach is somewhat negative, and the instruction could have been more carefully written.

But clearly the sense of the instruction is that the jury must find the bridge did not have under it a sufficient areaway to pass through the embankment the water reaching and obstructed by the embankment. That the water coming down the Wakenda watercourse to Bridge 516 was on the upstream side of the embankment is by all conceded. That the necessary flow of the waters through the embankment to the south as of course was obstructed by the construction of the railroad embankment is in no wise denied by any witness or any party. The case was tried upon that theory by all parties. All briefs concede it. No witness and no party did or could deny it. It is not reversible error "to either assume or omit to require the jury to find admitted facts." Bowers v. Kansas City Public Service Co., 328 Mo. 770, 41 S. W. (2d) 810. Cases must be submitted and considered on the same theory upon which they were tried below. We will not review a case upon a theory different from that upon which it was tried in the circuit court. Litigants are not permitted to blow both hot and cold in the same case, even in different courts. Morris v. Equitable Assur. Soc. of U. S., 340 Mo. 709, 102 S. W. (2d) 569, White v. Kentling, 345 Mo. 526, 134 S. W. (2d) 39, Wiener v. Mutual Life Ins. Co. of N. Y., 352 Mo. 673, 179 S. W. (2d) 39. We find no reversible error in instruction I and defendant's contention must be denied.

■ Of instruction C. Defendant's refused instruction C predicated a verdict for defendant if the jury found the capacity of the opening under Bridge 516 in June, 1942 and in May, 1945 was as great as the capacity of the opening under the bridge just prior to the construction of the new bridge in 1903. Complaint is made of the refusal of that instruction. Defendant's own evidence, by its bridge engineer, was sufficient to justify the refusal to give instruction C. We do not find any evidence to support the instruction, defendant does not point to any, and does not even assert that there is evidence here to support it. Mr. Johnson's own testimony affirmatively established that the opening under the former bridge was larger in area than under Bridge 516. Even if there had been testimony to support it, the refusal to give instruction C was proper. The question for the jury's determination in this case was not which of the two bridges had the greater flowage capacity under it. The submissible issue here was whether, under the circumstances shown, defendant violated the statute as to Bridge 516.

■ Of instructions D and E. These instructions are identical, except that instruction D covered the year 1942 and instruction E covered 1945. The instructions each predicated a verdict for defendant if at the time the levee (above Bridge 516) broke, the land south of the railroad and east of the Wakenda waterway was over-

flowed. These instructions were properly refused. As hereinabove set out there was evidence admitted both pro and con upon that question. But if that land was overflowed when the levee broke, it was no defense whatever if defendant failed (as the evidence in this case shows it did) to provide a sufficient outlet for the water through its embankment. This contention is without merit.

Defendant next contends the verdict as to the amount of damages awarded is not based upon the evidence. After careful examination of this record, we have concluded that the amount of damages awarded upon each of the twenty-five counts is based upon substantial evidence and allowable inference as to the damage to the crops of each plaintiff. The fact that the jury allowed each plaintiff only about sixty per cent of the damages claimed in the petition cannot invalidate the jury's verdict. There is no proof here that there was any agreement among the members of the jury to allow each plaintiff any percentage of the damages claimed. We cannot presume any such agreement existed. From the facts before us we cannot assume the jury returned anything but an honest verdict upon the evidence before it. The allowance of damage (as to the amount the jury could allow) is well within the pleadings and the proof. And neither the trial court nor an appellate court, under these circumstances, may hold that as a matter of law this verdict is void. Under these circumstances we must presume the jury carefully considered the testimony as to damages as to each count and that the amount of the damages was assessed after deliberate consideration of the testimony. Since the adoption of the jury system, the sanctity of the jury's deliberations and the presumption of the jury's honesty and sincerity in its verdict has been zealously guarded and (absent convincing and almost conclusive evidence to the contrary) are sustained by the courts. We cannot set aside the judgment because the jury did not award all of the damages authorized under the proof. Nor can we, without further proof than here appears, take from plaintiffs their constitutional "right of trial by jury" by here invalidating the instant verdict and judgment. Thompson v. City of Lamar, 322 Mo. 514, 17 S. W. (2d) 960, 976. This assignment of error is overruled.

It is last contended by defendant that the verdict is not supported by legal and competent evidence. Under this point of its brief defendant contends that as to some of the counts in the petition there was insufficient proof as to ownership, interest in the crops and damage to the crops; and that the evidence as a whole required the jury to speculate and conjecture in its deliberations and determinations as to damages. Defendant's statement of facts in its brief, and its page references therein to the transcript are so deficient in the above respects that its brief has been of no value whatever to us in the determination of this question. The references are not even

specific in defendant's printed argument and the claimed deficiencies in plaintiffs' proof are not therein pointed out. If defendant intended to rely upon this point, these claimed deficiencies in the proof should have been pointed out in painstaking and infinite detail in its brief. These omissions of defendant have increased many fold the labor of the preparation of this opinion and are sufficient to justify the peremptory overruling of this contention. But we have carefully read and re-read this transcript to evaluate the merit, if any, in this contention. As to some of the counts, the record testimony and its references to the petition and exhibits have been exceedingly difficult to follow, work out or understand with much satisfaction. Not all of the plaintiffs testified, and some witnesses gave testimony as to many counts, many tracts of land, and the damages to the different crops thereon. Where there were so many counts, so many varying interests and ownerships, and so many different crops upon so many tracts of land combined in one petition, and where the evidence covered two different flood years, the proof in the trial court was laborious, of course, but these particular matters were indifferently developed and identified in the transcript by counsel. But no doubt the trial court and the jury had less difficulty than we have had in understanding and properly relating this portion of the proof.

We have finally concluded, however, that the proof is sufficient to support the verdict rendered. The testimony of the landowners, the tenants of the land, and the neighboring farmers, when all considered as a whole, presents sufficient substantial evidence and inference to justify the jury's verdict upon each count. This contention must be overruled.

The judgment of the circuit court is affirmed. It is so ordered. All concur.