Anna BUSCHELBERG (Plaintiff),
Respondent,

v.

CHICAGO, BURLINGTON & QUINCY
RAILROAD COMPANY, a Corporation
(Defendant), Appellant.

No. 29383.

St. Louis Court of Appeals.

Missouri.

April 17, 1956.

Motion for Rehearing or for Transfer to
Supreme Court Denied May 11, 1956.

Robert V. Niedner, Niedner & Niedner, St. Charles, for appellant.

H. K. Stumberg, St. Charles, for respondent.

WOLFE, Commissioner.

This is an action to recover damages caused by flood waters flowing through an underpass in the right of way of defendant's railroad embankment. The trial was to the court and resulted in a finding and judgment for the plaintiff from which the defendant has appealed.

The general area with which we are concerned is the low flood plain of the Missouri and Mississippi Rivers near their confluence. This area is peninsular in shape and about seven miles in length, bounded by the waters of the Missouri on the south and by the waters of the Mississippi on the north, as the Mississippi flows in a general easterly direction at this point. The rivers converge at the tip of the peninsula. The width of the area between the two rivers varies, but it is not more than two miles wide near the land in question. The defendant's railroad track, which is built over high solid fill, runs down the peninsula between the two rivers to the town of West Alton, which is about two miles from the tip of the peninsula or point of the rivers' confluence. At West Alton the tracks turn abruptly south toward the Missouri River and continue over a solid fill to the banks of the river where the tracks cross the Missouri by way of the Bellefontaine Bridge. The peninsula both east and west of West Alton is generally low and level, the higher areas being about 430 feet above sea level as compared with about 415 feet above sea level at each riverbank. There are, however, to the south of West Alton two long parallel depressions at levels of 425 feet running parallel with the Missouri River. These depressions are bisected by the railroad as it runs from West Alton southerly to the Bellefontaine Bridge. The north end of Bellefontaine Bridge is much higher than the riverbank and in order to reach this higher elevation several miles of trestlework were originally constructed extending northward from Bellefontaine Bridge to West Alton and then westward up the peninsula. Later this trestlework was filled in with earth to form a solid embankment and it has so been for about fifty years. At the town of West Alton this embankment is about 20 feet higher than the surrounding land.

To protect the embankments along their south and east sides the railroad constructed "Bradshaw Levee No. 2". This levee joins the railway embankment about a mile west of West Alton, and it then runs southeastwardly to rejoin the embankment at the banks of the Missouri River. The fill and the levee thus running north and south from West Alton to the bridge cut across the area over which the Missouri would naturally flow toward its confluence with the Mississippi. No drainage is provided through the fill but there are two highway underpasses. One of these highways passes under the tracks as they run east and west

at the southern boundary of West Alton. West Alton lies just north of the point where the tracks turn southwardly. The other underpass is to the south passing below the tracks as they run north and south, but it is at a higher elevation and has no effect on the situation before us.

Plaintiff owned several lots in block 12 of West Alton upon which was constructed a building occupied as a restaurant. One of the lots that she owned was lot 9 which adjoined the railroad right of way just east of the underpass for Highway 94 and the lot fronted upon the highway. The petition alleged ownership of the land in both Anna Buschelberg and her husband but the evidence disclosed that August Buschelberg had no interest in the real estate and the petition was dismissed as to him.

. The damage for which recovery is sought occurred during the floods of 1947 and 1951. They were not unprecedented as one or both of the rivers had flooded West Alton in 1903, 1908, 1909, 1928, 1943 and 1944. The effect of defendant's embankment was to impede the flow of the Missouri River at times of high water, causing the waters to be impounded at all points except at the underpass for the highway upon which the plaintiff's property fronted. This caused a great discharge of water directly on the plaintiff's land. In its natural state the river would have spread out evenly over the flood plain and found drainage at the rivers' confluence. In 1947, and again in 1951, both the Mississippi River and the Missouri River flooded, and West Alton was inundated first by the waters of the Mississippi, then the Missouri River waters rose behind defendant's embankment to a level of 5 or 6 feet higher than the waters on the opposite side. This water flowed northwardly through the underpass which was its only outlet. The flow was at a high velocity scouring out a deep hole in plaintiff's ground. Previous floods had similarly damaged this ground but it had long since been refilled. The 1947 flood cut into the southwesterly corner of plaintiff's tract and this was partially refilled by the plaintiff. The 1951 flood enlarged this hole, washing out shrubbery, the foundations of two out-

houses, and a portion of a parking lot used in connection with the restaurant in the northwest portion of the tract. There was evidence that other holes had been scoured out by the river in the general area.

There was evidence as to the value of the land before and after the flood damage but this will be summarized in passing upon the point raised in relation to it.

■ The appellant contends that since it had paid plaintiff's predecessor in title for its railroad right of way it had a right to construct the embankment, and that any damages arising as a natural consequence of this were included in the original compensation paid. We are cited to Benson v. Chicago & A. R. Co., 78 Mo. 504; Abbott v. Kansas City, St. J. & C. B. R. Co., 83 Mo. 271; Jones v. St. Louis, I. M. & S. Ry. Co., 84 Mo. 151, and Moss v. St. Louis, I. M. & S. Ry. Co., 85 Mo. 86. In none of these cases was the court concerned with a railroad blocking the flow of water in a natural watercourse. The statutory duty of a railroad is to provide a sufficient outlet for such water. Section 389.660 RSMo 1949, V.A.M.S.; Smithpeter v. Wabash R. Co., 360 Mo. 835, 231 S.W.2d 135, 19 A.L.R. 2d 950. Most right of ways for railroads are acquired by purchase or by condemnation, which amounts to the same thing as far as the rights going with the acquisition are concerned. If the statutory duty did not apply in such cases it would be almost wholly without application, and the fact that the right of way was purchased from plaintiff's predecessor in title in no way relieved the defendant from the obligations fixed by statute.

■ The appellant states that the plaintiff seeks recovery from it for damages for which it is not liable as the occurrence which resulted in her damage was an "act of God". An "act of God", and "act of providence", or "nature", as it is variously called, is an occurrence due to natural causes against which ordinary skill and foresight is not expected to provide. 1 C.J. S., Act, p. 923. We have no such situation here, for the floods were recurring things

against which provision should have been taken and was in fact taken by the defendant in protecting its own right of way by the construction of the levee. This point must therefore be ruled against the appellant. Neither does the fact that other holes were made in the land by the river relieve the defendant from liability for the damage it caused by impounding the water.

■ It is contended that there was no evidence of any negligence on the part of the defendant and that Section 389.660 RSMo 1949, V.A.M.S., applies only to impounding water and not to discharging it upon the land of others. We are cited to a number of cases, which to discuss would unduly lengthen this opinion, for the Supreme Court en banc in Smithpeter v. Wabash R. Co., 360 Mo. 835, 231 S.W.2d 135, 19 A.L.R.2d 950, made an exhaustive review of the matter and concluded that the statute provided that a railroad may not back up water flowing in a natural watercourse by a bridge which is not sufficient to permit all water coming down the channel to pass through the railroad embankment even in flood time. See, also, Jones v. Chicago, B. & Q. R. Co., 343 Mo. 1104, 125 S.W.2d 5; Murphy v. St. Louis-San Francisco R. Co., 205 Mo.App. 682, 226 S.W. 637; Coggins v. Atchison, T. & S. F. R. Co., 215 Mo.App. 506, 256 S.W. 824. The defendant by its solid fill to the riverbank has blocked the flow of the Missouri in its natural course. It was, of course, negligence to impound the water in violation of the statute so as to cause it to flow with great force upon the plaintiff's land. Struckhoff v. Thompson, Mo.App., 241 S.W.2d 39; White v. Wabash R. Co., 240 Mo.App. 344, 207 S.W. 2d 505.

■ The appellant contends that plaintiff's action was barred by the statute of limitations. It is maintained that the cause of action arose at the time the fill was made over fifty years before and any damages caused thereby were barred by the five-year statute of limitations. It is true that the five-year statute of limitations, Section 516.120 RSMo 1949, V.A.M.S., applies to actions against railroads for damages caused by flood. Brown v. Quincy, O & K. C. R. Co., 198 Mo.App. 71, 199 S.W. 707; Brown v. St. Louis & S. F. R. Co., 212 Mo.App. 541, 248 S.W. 12. It is, however, also true that the statute does not run from the time of the construction of the fill but from the time the plaintiff is damaged by the flood waters unlawfully impounded. Jones v. Chicago, B. & Q. R. Co., 343 Mo. 1104, 125 S.W.2d 5; Brown v. St. Louis & S. F. R. Co., supra.

■ It is further contended that the evidence as to damages was not sufficient to warrant a judgment for $1,500 on count one and $500 on count two of plaintiff's petition. Count one had to do with the damage caused in 1947 and count two was for the damage caused in 1951. The plaintiff, who had heard of prices asked and had heard of the sale prices of property in West Alton and whose sister had recently made a purchase there, stated that the property was worth $7,000 before the 1947 flood and worth only $5,500 after the flood. Another witness testified that the hole after the 1947 flood was very large and that before the flood the property was worth between $6,500 and $6,700 and that immediately thereafter it was worth from $4,000 to $5,000. He said that the hole caused by the 1947 flood had been filled with rock. The cost of filling it was about $800 according to the testimony of plaintiff's husband. This fill was washed out by the 1951 flood and the hole was much larger. Witnesses who are familiar with the land and who have lived in the neighborhood of it for a number of years, as these had, are competent as witnesses to prove its value. State ex rel. State Highway Comm. v. Devenyns, Mo.App., 179 S.W.2d 740. In addition to the testimony there were photographs put in evidence whereby the damage was made quite evident. All of this was sufficient to support the amount of the award which appears reasonable.

We are aided by a clear and concise finding of the facts and conclusions of law by the learned trial judge from which the

writer has borrowed freely, and finding no error it is the recommendation of the Commissioner that the judgment be affirmed.

PER CURIAM.

The foregoing opinion of WOLFE, C., is adopted as the opinion of the court.

The judgment of the circuit court is accordingly affirmed.

ANDERSON, P. J., and N. T. CAVE and GEORGE P. ADAMS, Special Judges, concur.